

2001 Decisions

3-22-2001

# Montrose Med'l Group v. Bulger

Precedential or Non-Precedential:

Docket 00-3430

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Montrose Med'l Group v. Bulger" (2001). *2001 Decisions.* Paper 58.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/58

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 22, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-3430

MONTROSE MEDICAL GROUP
PARTICIPATING SAVINGS PLAN;
MONTROSE GENERAL HOSPITAL, INC.,
Appellants

v.

RICHARD A. BULGER; WALTER GARVEY;
MUTUAL LIFE INSURANCE COMPANY OF NEW YORK

v.

MUTUAL LIFE INSURANCE COMPANY OF NEW YORK;
RICHARD A. BULGER, Third-Party Plaintif fs

v.

EUDORA BENNETT; MONTROSE MEDICAL ARTS
PHARMACY, INC.; MEDICAL ARTS NURSING
CENTER, INC.; MEDICAL ARTS CLINIC,
Third-Party Defendants

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Civ. No. 94-cv-02141)
District Judge: Honorable Thomas I. Vanaskie, Chief Judge

Argued: November 30, 2000

Before: BECKER, Chief Judge, and
MAGILL,* Circuit Judge.

(Filed March 22, 2001)

WILLIAM W. WARREN, JR.,
 ESQUIRE (ARGUED)
Saul, Ewing, Remick & Saul, LLP
Penn National Insurance Tower
2 North Second Street, 7th Floor
Harrisburg, PA 17101

CATHLEEN M. DEVLIN, ESQUIRE
Saul, Ewing, Remick & Saul, LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102

Counsel for Appellants

_____

* Honorable Frank J. Magill, United States Cir cuit Judge for the Eighth
Circuit, sitting by designation. The Honorable Marjorie O. Rendell
participated in this case from its inception in this Court through pre-
filing circulation of the opinion to the full Court pursuant to Third
Circuit Internal Operating Procedur e 5.6.4. At that juncture, the routine
computer recusal check made for all cir culating opinions revealed, for
the first time, a recusal problem in the nature of contributions to the
political campaign of her husband Edward G. Rendell, former Mayor of
Philadelphia. The background of the problem is encapsulated in the
following notice, that is routinely sent to all parties and their counsel
in
all cases in this Court when the docketing notice is sent.

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT
_____
NOTICE
_____

     TO ALL PARTIES AND THEIR COUNSEL:

   You are hereby advised that the Honorable Marjorie O. Rendell,
a judge of this Court, whose spouse, Edward G. Rendell, has raised
funds for his campaigns for public office, advises the parties and
counsel in this case that Judge Rendell will automatically recuse
in all cases where the aggregate campaign contribution to Rendell
`95 by a party or law firm repr esenting a party, from January 1,
1995 to the present, is $2501.00 or greater. For contributions less
than $2501.00, Judge Rendell will not automatically recuse unless

2

the parties or counsel in the case file an objection.* Mr. Rendell does not currently hold elective office but is chairman of the Democratic National Committee, headquartered in Washington, D.C.

During the pendency of this appeal, Judge Rendell could be one of the judges randomly assigned to decide a motion or the merits of this case. IF YOU OBJECT TO HER DOING SO BASED ON A CONTRIBUTION(S) MADE BY A PARTY OR COUNSEL IN THE CASE, you may object to her participation by filing the enclosed CONFIDENTIAL REQUEST FOR DISQUALIFICATION within ten (10) days of the date of the docketing letter.

IF YOU DO SO OBJECT, Judge Rendell will be automatically disqualified from participation in any aspect of this appeal; otherwise, Judge Rendell will participate if the case is assigned to her.

IF YOU DO NOT OBJECT, you will be deemed to have waived objection to Judge Rendell's participation in any aspect of this appeal. Also, if Judge Rendell is automatically recused as set forth above, nonetheless all parties can agree to waive disqualification to her participation by filing the enclosed JOINT REQUEST FOR WAIVER. Such waiver would be made part of the public record.

By the Court:
/s/ Edward R. Becker
_____
Edward R. Becker, Chief Judge

Date: Wednesday, June 21, 2000

_____

*Complete reports of contributions to Rendell `95 are available as public records from the Office of the City Commissioners, Room 130, City Hall, Philadelphia, PA 19107 (telephone: 215-686-3460); or from Commonwealth of Pennsylvania Bur eau of Commissions, Elections & Legislation, 305 North Office Building, Harrisburg, PA 17120; or in the Third Circuit Clerk's Office, U.S. Courthouse, 601 Market Street, Room 21400, Philadelphia, P A 19106. This information will be updated at the Clerk's Office every 60 days, and the names of parties and counsel will be checked against contributions of record only at the issuance of the briefing order in the case.

3

E. THOMAS HENEFER, ESQUIRE
  (ARGUED)
Stevens & Lee
111 North Sixth Street
P.O. Box 679
Reading, PA 19603

CHARLES J. BLOOM, ESQUIRE
Stevens & Lee
1275 Drummers Lane
P.O. Box 236, Suite 202
Wayne, PA 19087

Counsel for Appellee/Third-Party
Plaintiff Mutual Life Insurance Co. of
New York

DANIEL MORGAN, ESQUIRE
O'Malley & Harris
345 Wyoming Avenue
Scranton, PA 18503

Counsel for Appellee/Third Party
Plaintiff Richard A. Bulger

_____

Since July 2000, the Court has utilized the Rendell`95 contributor data base (as updated), comparing the entries ther eon with the counsel and parties in cases in this Court. In this instance, the case was assigned to the panel prior to the time when the automated check of campaign contributions of Rendell `95 had been fully integrated into the Court's recusal system. Judge Rendell ther efore had no constructive knowledge of a contribution to her husband's campaign by counsel for one of the parties to this appeal. In fact, she also had no actual knowledge of any such contribution or of any gr ound upon which her impartiality could reasonably be questioned.

However, once the recusal problem appeared, earlier this month upon circulation of the opinion to the full Court, she determined to recuse, in the absence of agreement of all parties that she continue, which was not forthcoming.

Chief Judge Becker and Judge Magill have conferr ed in the wake of this development and reaffirm their commitment to the opinion as written. Accordingly, the opinion is filed notwithstanding the recusal of Judge Rendell. See 28 U.S.C. S 46(d).

4

DANIEL T. BRIER, ESQUIRE
Myers, Brier & Kelly
425 Spruce Street, Suite 200
Scranton, PA 18503

Counsel for Appellees/Third Party
Defendants Eudora Bennett;
Montrose Medical Arts Pharmacy,
Inc.; Medical Arts Nursing Center,
Inc.; and Medical Arts Clinic

OPINION OF THE COURT

BECKER, Chief Judge.

This appeal, set in the context of an ERISA br each of
fiduciary duty action, largely concer ns the doctrine of
judicial estoppel. The District Court applied the doctrine to
bar Plaintiffs Montrose General Hospital, Inc. (Hospital) and
Montrose Medical Group Participating Savings Plan (Plan)
from asserting that the Plan is covered by ERISA on
account of representations they had made in a related prior
litigation. Because this suit is based on the pr emise that
ERISA governs the Plan, the District Court's ruling
rendered the Hospital and the Plan unable to state a prima
facie case. The court therefore enter ed summary judgment
in favor of Defendants Mutual Life Insurance Company of
New York (MONY), whose insurance policies funded the
Plan, and Richard Bulger, an outside consultant affiliated
with MONY who had brought the parties together .

Judicial estoppel may be imposed only if: (1) the party to
be estopped is asserting a position that is irr econcilably
inconsistent with one he or she asserted in a prior
proceeding; (2) the party changed his or her position in bad
faith, i.e., in a culpable manner threatening to the court's
authority or integrity; and (3) the use of judicial estoppel is
tailored to address the affr ont to the court's authority or
integrity. Though we agree that the inconsistency prong is
satisfied in this case, the other two are not. Guided by
Cleveland v. Policy Management Systems Corp., 526 U.S.
795 (1999), we hold that a party has not displayed bad

5

faith for judicial estoppel purposes if the initial claim was never accepted or adopted by a court or agency. Because the earlier statements in this case were never accepted or adopted, judicial estoppel was inappropriate.

We hold in the alternative that application of judicial estoppel was not tailored to address any harm occasioned by the change of positions. First, the only "har m" identified by the District Court was inflicted upon thir d parties–– fourteen plan participants who had sued the Hospital, the Plan, MONY, and Bulger in the prior litigation. Judicial estoppel's sole valid use, however, is to r emedy an affront to the court's integrity. Second, judicial estoppel is an inappropriate sanction here because its ef fects would be borne not by any wrongdoers, but by innocent third parties.

Having determined that the District Court was wrong to invoke judicial estoppel, we turn to MONY's and Bulger's alternate grounds for affirmance. We ultimately decline to rule on most of them, concluding instead that it would be better to let the District Court pass on them in thefirst instance. We do, however, reach and reject MONY's and Bulger's assertion that they are entitled to summary judgment on statute of limitations grounds.

I.

In the late 1970s, the Hospital decided to cr eate a retirement plan. It informed its accountant, Defendant Walter Garvey, of its intentions.1  Garvey, in turn, contacted Bulger, an outside consultant who was affiliated with MONY. Bulger proposed a plan, which the Hospital ultimately adopted. The Plan was plagued by financial troubles from the beginning, and, acting on advice from Bulger, the Hospital altered its funding mechanism on

_____

1. Garvey never moved for summary judgment. Concluding that there was no just reason to delay this appeal and acting pursuant to the powers conferred upon it by Federal Rule of Civil Procedure 54(b), the District Court directed the clerk to enter afinal judgment in favor of MONY and Bulger. The District Court had jurisdiction under 28 U.S.C. S 1331. Ours is conferred by 28 U.S.C.S 1291.

several occasions. These efforts were ultimately unsuccessful, and the Hospital ceased paying pr emiums in connection with the Plan in either late 1991 or early 1992.

Soon thereafter, fourteen of the sixty-seven plan participants sued the Hospital, the Plan, MONY , Bulger, and Garvey. We will refer to this suit as either the "Hickok action" or the "Hickok litigation," after its first named plaintiff, June Hickok. The Hickok plaintiffs alleged that the Plan was governed by ERISA, and charged the defendants with numerous violations of their purportedfiduciary duties under that statute. In their Answer, the Hospital and the Plan raised eight defenses, two of which are pertinent here. Paragraph 7 "specifically denied that the plan[was] an employee pension benefit plan within the meaning of section 3 of ERISA," and Paragraph 11 averr ed that "[t]he claims of the Plaintiffs [were] barred by the statute of limitations." The Hospital and the Plan r epeated these claims in their Amended Answer and Pre-T rial Memorandum.

The Hickok action settled for $600,000 in May 1994. MONY and Bulger assumed responsibility for $500,000, and the Hospital and the Plan were requir ed to pay the remaining $100,000. The settlement was distributed among the fourteen plan participants who were plaintiffs in Hickok; nothing was paid to the fifty-thr ee who were not.

Following closely on the heels of the Hickok settlement, the Hospital and the Plan brought this action against MONY, Bulger, and Garvey, seeking to press claims on behalf of the remaining fifty-three plan participants. The claims in this case are essentially the same as those against which the Hospital and the Plan were co-defendants in Hickok.2 The Complaint avers that "[t]he plaintiff Plan is an employee benefit plan within the meaning ofS 3(2)(A) of ERISA," and that the Hospital is bringing this suit in its capacity as fiduciary of the Plan. The Hospital and the Plan

_____

2. The parties disagree as to whether the Settlement Agreement and Release that ended the Hickok action specifically preserved or precluded the Hospital and the Plan from later suing MONY , Bulger, and Garvey. The District Court has never definitively ruled on the question.

have not countered the charge that if the claims in Hickok were time-barred, then those in this case are as well.

Discovery ensued and both MONY and Bulger eventually moved for summary judgment. In support of their motions, MONY and Bulger averred that: (1) judicial estoppel should bar the claims against them; (2) the claims wer e untimely; (3) they were not ERISA fiduciaries; (4) the Hospital and the Plan were not entitled to equitable relief; and (5) the Hospital's and the Plan's "prohibited transaction" claims were without merit. Ruling on the motions, the District Court invoked judicial estoppel to bar the Hospital and the Plan from repudiating their previously expressed position that ERISA did not apply to the Plan. Because the claims pressed in this suit rest on an assertion that ERISA governs the Plan, the District Court's holding render ed the Hospital and the Plan unable to state a prima facie case, and the court entered summary judgment on behalf of MONY and Bulger. With regard to the other proffered bases for summary judgment, the court remarked that "[a]n examination of the record reveals . .. material issues of fact that would militate against granting summary judgment. In light of the application of judicial estoppel . . ., these other issues, however, need not be addressed." This appeal followed.

II.

Federal courts possess inherent equitable authority to sanction malfeasance. One such sanction is judicial estoppel. See Klein v. Stahl GMBH & Co. Maschinefabrik, 185 F.3d 98, 109 (3d Cir. 1999). For r easons explained in the margin, judicial estoppel is distinct fr om both equitable and collateral estoppel.3 When pr operly invoked, judicial

_____

3. "Judicial estoppel looks to the connection between the litigant and the judicial system while equitable estoppel focuses on the relationship between the parties to the prior litigation." Oneida Motor Freight, Inc. v.
United Jersey Bank, 848 F.2d 414, 419 (3d Cir. 1988). Privity and detrimental reliance--prerequisites for the application of equitable estoppel--are not required for invocation of judicial estoppel. See Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 360 (3d Cir. 1996). Collateral estoppel is used to pr otect the finality of judgments

estoppel bars a litigant from asserting a position that is inconsistent with one he or she previously took before a court or agency. Summary judgment is appropriate when operation of judicial estoppel renders a litigant unable to state a prima facie case.

Three requirements must be met befor e a district court may properly apply judicial estoppel. First, the party to be estopped must have taken two positions that ar e irreconcilably inconsistent. See Ryan Operations G.P. v. Santiam–Midwest Lumber Co., 81 F.3d 355, 361 (3d Cir. 1996). Second, judicial estoppel is unwarranted unless the party changed his or her position "in bad faith--i.e., with intent to play fast and loose with the court." Id. Finally, a district court may not employ judicial estoppel unless it is "tailored to address the harm identified" and no lesser sanction would adequately remedy the damage done by the litigant's misconduct. Klein, 185 F.3d at 108 (quotation marks and citation omitted).4

Though a district court's ultimate decision to invoke the doctrine is reviewed only for abuse of discr etion, see Anjelino v. New York Times Co., 200 F.3d 73, 100 (3d Cir. 2000), a court "abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts," In re O'Brien, 186 F .3d 116, 125 (3d Cir. 1999). In this case, we agree with the District Court that the Hospital

_____

and to conserve judicial resources, see Dici v. Pennsylvania, 91 F.3d 542, 547 (3d Cir. 1996), whereas judicial estoppel is concerned solely with protecting the integrity of the courts, see Klein, 185 F.3d at 109. And though collateral estoppel may not be employed unless the underlying issue was actually litigated, see Witkowski v. Welch, 173 F.3d 192, 198–99 (3d Cir. 1999), there is no such r equirement for the use of judicial estoppel, see Anjelino v. New York Times Co., 200 F.3d 73, 100 (3d Cir. 2000).

4. We acknowledge that our cases have sometimes omitted this final inquiry and referred to Ryan Operations's "two threshold questions." Motley v. New Jersey, 196 F.3d 160, 163 (3d Cir. 1999); see also McNemar v. Disney Store, Inc., 91 F .3d 610, 618 (3d Cir. 1996). But because Klein squarely held that a district court may not invoke judicial estoppel without also conducting this inquiry, see 185 F.3d at 108–11, we conclude that it is a necessary part of the analysis.

and the Plan have taken inconsistent positions. We hold, however, that the District Court's finding of bad faith was built upon an error of law, and was therefore unsound. We hold also that the District Court abused its discretion in concluding that judicial estoppel was an appropriate sanction in this case because it was not tailored to address an affront to the court's integrity and because its use would create rather than defeat a miscarriage of justice.5

_____

5. Although both parties briefed it, the possibility of judicial estoppel was
never addressed during the lengthy oral argument before the District Court. It surfaced in the court's opinion. We have held that a district court need not always conduct an evidentiary hearing before finding the existence of bad faith for judicial estoppel purposes, see Klein, 185 F.3d at 111 n.13; Ryan Operations, 81 F.3d at 364-65, but two precepts are nevertheless clear. First, a court considering the use of judicial estoppel
should ensure that the party to be estopped has been given a meaningful opportunity to provide "an explanation" for its changed position. Cleveland v. Policy Management Sys. Corp., 526 U.S. 795, 807 (1999). Second, though a court may sometimes "discern" bad faith without holding an evidentiary hearing, it may not do so if the ultimate finding of bad faith cannot be reached without first resolving genuine disputes as to the underlying facts. The facts of this case provide an apt illustration. The parties agree that the Hospital and the Plan changed their position regarding ERISA's applicability to the Plan following the settlement of the Hickok action, but vehemently disagree why they did so. According to MONY and Bulger, the change represented a cynical attempt to forestall future suits and to secure a hefty recovery for the Hospital's owners and other highly-paid employees. Not surprisingly, the Hospital and the Plan offer a different account, claiming that years of deception by MONY and Bulger falsely led them to believe that the Plan was not covered by ERISA until efforts by their current counsel revealed the truth. If the account offered by the Hospital and the Plan is accurate,
then they may have been negligent for not realizing that MONY and Bulger were dissembling sooner, but they almost certainly did not act in bad faith vis-a-vis the court. In such a situation, it would generally be inappropriate to make a finding of bad faith without first determining which of these conflicting accounts is true--something that could not be done without an evidentiary hearing. Fortunately, as will become clear, the neglect of the judicial estoppel issue earlier in this case has not impeded our resolution of this appeal.

10

A.

The Hospital and the Plan have taken inconsistent positions. Three times during the Hickok action they specifically denied that the Plan was cover ed by ERISA, but this suit is based on the premise that it is. Furthermore, the Hospital and the Plan do not deny that the claims they press in this suit are materially identical to the ones brought in Hickok. The Hospital and the Plan argued that the Hickok claims were time-barr ed, and the claims in this case were brought after those in Hickok. If the Hickok action was time-barred, then this one is as well. We therefore agree with the District Court that the inconsistency element is satisfied.

B.

Inconsistencies are not sanctionable unless a litigant has taken one or both positions "in bad faith--i.e., with intent to play fast and loose with the court." Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 361 (3d Cir. 1996). A finding of bad faith "must be based on more than" the existence of an inconsistency, Klein v. Stahl GMBH & Co. Maschinefabrik, 185 F.3d 98, 111 (3d Cir. 1999) (emphasis added); indeed, a litigant has not acted in "bad faith" for judicial estoppel purposes unless two requirements are met. First, he or she must have behaved in a manner that is somehow culpable. See Ryan Operations, 81 F.3d at 362 (stating that judicial estoppel may not be employed unless " `intentional self contradiction is . . . used as a means of obtaining unfair advantage' " (quoting Scarano v. Central R. Co. of N.J., 203 F.2d 510, 513 (3d Cir. 1953) (emphasis added))); id. ("An inconsistent argument sufficient to invoke judicial estoppel must be attributable to intentional wrongdoing ." (emphasis added)); see also In re Chambers Dev. Co. Inc., 148 F.3d 214, 229 (3d Cir. 1998) (quoting this language fr om Ryan Operations).

Second, a litigant may not be estopped unless he or she has engaged in culpable behavior vis-a-vis the court. As we have stressed time and time again, judicial estoppel is concerned with the relationship between litigants and the

11

legal system, and not with the way that adversaries treat each other. See, e.g., Ryan Operations , 81 F.3d at 360 ("Judicial estoppel `is intended to pr otect the courts rather than the litigants.' " (quoting Fleck v. KDI Sylvan Pools, Inc., 981 F.2d 107, 121-22 (3d Cir. 1992))); Delgrosso v. Spang & Co., 903 F.2d 234, 241 (3d Cir. 1990) (same). Accordingly, judicial estoppel may not be employed unless a litigant's culpable conduct has assaulted the dignity or authority of the court.

To assess whether the Hospital and the Plan have engaged in wrongful conduct that may fairly be described as a threat to the integrity of the courts, we must review what they did. In the Hickok action, fourteen plan participants charged the Hospital and the Plan with violating ERISA-imposed fiduciary duties. In their Answer, Amended Answer, and Pre-Trial Memorandum, the Hospital and the Plan averred, among other defenses, that the Plan was not subject to ERISA and that the plaintif fs' claims were time-barred. Before the district court ruled on any dispositive motions and before the case went to trial, the parties settled, and the case was dismissed. Shortly thereafter, the Hospital and the Plan br ought the present suit on behalf of the fifty-three plan participants who had not been plaintiffs in Hickok. In this litigation, the Hospital and the Plan assert--in direct contravention of their positions in Hickok--that the Plan is  covered by ERISA and that the specific claims (which are, in all r elevant respects, identical to those they argued were untimely while defending Hickok) are timely.

The important threshold question--the answer to which we find dispositive in this case--is whether a district court may properly find the existence of bad faith if the initial inconsistent statement was never accepted or adopted by a court or agency. MONY and Bulger apparently assume that it may. Guided by the Supreme Court's r ecent decision in Cleveland v. Policy Management Systems Corp., 526 U.S. 795 (1999), we disagree.

The issue in Cleveland was whether a person who sought Social Security Disability Insurance (SSDI) benefits could later be judicially estopped from claiming pr otected status under the Americans with Disabilities Act (ADA). In seeking

12

SSDI benefits, the claimant certified that she was "disabled" and "unable to work," but in a later ADA suit she submitted that she could "perform the essential functions" of a job "with . . . a reasonable accommodation." See id. at 798-99. Observing "that, in context, these two seeming divergent statutory contentions are often consistent with each other," the Court held that "pursuit, and receipt, of SSDI benefits does not automatically estop the r ecipient from pursuing an ADA claim." Id. at 797.

Though Cleveland's earlier claim had been accepted by the administrative agency, see id. at 802 (stating that she had "both applied for, and received, SSDI benefits"), the Court laid down guidance highly pertinent to this case. Quoting Federal Rule of Civil Procedure 8(e)(2), it noted that "[o]ur ordinary Rules recognize that a person may not be sure in advance upon which legal theory she will succeed, and so permit parties to `set forth two or more statements of a claim or defense alternatively or hypothetically' and to `state as many separate claims and defenses as the party has regardless of consistency.' " Id. at 805. Stressing that "if an individual has merely applied for, but had not been awarded, SSDI benefits, any inconsistency in the theory of the claims is of the sort normally tolerated by our legal system," the Court opined that it did "not see why the law in respect to the assertion of SSDI and ADA claims should differ." Id.

Guided by Cleveland, we hold that it does not constitute bad faith to assert contrary positions in dif ferent proceedings when the initial claim was never accepted or adopted by a court or agency. Because the practice is specifically sanctioned by the Federal Rules, asserting inconsistent claims within a single action obviously does not constitute misconduct that threatens the court's integrity. In Cleveland, the Supreme Court drew a direct parallel between pleading inconsistently in a single case and doing so in subsequent ones, so long as the initial claim was never sustained. Moreover, the Court described the latter type of inconsistencies as "the sort normally tolerated by our legal system." Though the Court did not use the magic words--"it is not bad faith to assert inconsistent claims in separate actions so long as the initial

13

position was never accepted by a court or agency"—— Cleveland's import is clear.

The rule we adopt is consistent with judicial estoppel's purpose of protecting the integrity of the courts. "Judicial estoppel addresses the incongruity of allowing a party to assert a position in one tribunal and the opposite in another tribunal. If the second tribunal adopted the party's inconsistent position, then at least one court has probably been misled." Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 599 (6th Cir. 1982). But if a party's initial position was never accepted by a court or agency, then it is difficult to see how a later change manifests an "intent to play fast and loose with the court[s]," Ryan Operations G.P. v. Santiam– Midwest Lumber Co., 81 F.3d 355, 361 (3d Cir. 1996) (emphasis added), any more than pleading inconsistently in a single action does. We think this insight explains why the consensus view among our sister circuits is that judicial estoppel is inappropriate unless the earlier position was accepted by a court or agency.6 This rule also has support in our cases. See Fleck v. KDI Sylvan Pools, Inc., 981 F.2d 107, 121 (3d Cir. 1992) ("[W]her e a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter , simply because his interests have changed, assume a contrary position . . . ." (quotation marks and citation omitted) (emphasis added)).

We are unpersuaded by MONY's and Bulger's contentions that Cleveland is inapplicable here, or that stare decisis precludes adoption of the rule we announce today. Citing Gruber v. Hubbard Bert Karle Weber , Inc., 159 F.3d 780, 789 (3d Cir. 1998), and Deibler v. United Food & Commercial Workers' Local Union 23, 973 F.2d 206, 209 (3d Cir. 1992), they submit that the question whether a plan is covered by ERISA is one of fact rather than law. And

_____

6. See Faigin v. Kelly, 184 F.3d 67, 82 (1st Cir. 1999); Wight v. Bankamerica Corp., 219 F.3d 79, 90–91 (2d Cir. 2000); United Mineworkers of Am. v. Marrowbone Dev. Co., 232 F.3d 283, 290 (4th Cir. 2000); Lara v. Trominski, 216 F .3d 487, 495 n.9 (5th Cir. 2000); McMeans v. Brigano, 228 F.3d 674, 686 (6th Cir. 2000); Feldman v. American Mem'l Life Ins. Co., 196 F.3d 783, 790 (7th Cir. 1999); Tuveson v. Florida Governor's Counsel on Indian Af fairs, Inc., 734 F.2d 730, 735 (11th Cir. 1984) (same rule characterized as equitable estoppel).

14

because in Cleveland the Supreme Court expressly declined to disturb the law of judicial estoppel relating to "purely factual matters, such as `The light was r ed/green,' or `I can/cannot raise my arm above my head,' " 526 U.S. at 802, they suggest that Cleveland has no applicability to the issue now before us. We reject this contention for two reasons. First, it is waived because it was raised for the first time at oral argument. See W arren G. v. Cumberland County Sch. Dist., 190 F.3d 80, 84 (3d Cir. 1999). Second, we conclude that it is simply wrong on the merits. Though the question whether a particular plan is cover ed by ERISA may not be one of pure law, it is also not a"purely factual matter" in the sense the phrase was used in Cleveland.7

MONY and Bulger also submit that our pre-Cleveland case law precludes us from holding that there can be no bad faith for judicial estoppel purposes if the earlier statement was never accepted by a court or agency. First, to the extent this claim is true, we note simply that we owe greater fidelity to the decisions of the Supr eme Court than to our own. Second, we disagree that any of our cases have actually held that judicial estoppel may be imposed in a situation such as this one.

The only case that MONY and Bulger cite in support of their claim that judicial estoppel may lie in situations where the initial claim was never accepted or adopted by a court or agency is Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355 (3d Cir. 1996). Their reliance is misplaced. Ryan Operations held that a party seeking estoppel need not have been a party to the earlier proceedings, see id. at 359-60, and that the party facing estoppel need not have necessarily "benefitted" from its switch in position, see id. at 361. But Ryan Operations never stated that judicial estoppel could validly be applied

_____

7. Because Cleveland specifically declined to speak to the issue, and because there may be good reasons to apply a different rule in such cases, we intimate no view as to whether the rule we announce today should apply when the inconsistent statements involve purely factual matters.

15

in a case where the initial position was never accepted by a court or agency.[8]

Though our holding today may appear to be in some tension with our statement in Ryan Operations that there is no "independent requirement" that a party have "benefitted from its earlier position" to be estopped fr om changing it later, id. at 361, this tension is more apparent than real. First, the Ryan Operations principle r emains true today: so long as the initial claim was in some way accepted or adopted, no further showing is necessary that the party "benefitted" in any particular way. See, e.g., Anjelino v. New York Times Co., 200 F.3d 73, 100 (3d Cir. 2000) (upholding a district court's use of judicial estoppel wher e a litigant sought to withdraw its previous repr esentation to the court that no further discovery was needed). Second, our rule is consistent with Ryan Operations's admonition that "benefit may be relevant insofar as it evidences an intent to play fast and loose with the courts." 81 F.3d at 361. We do not hold that judicial or administrative acceptance is a prerequisite for its own sake, but rather conclude that a change of position simply cannot evidence bad faith vis-a-

_____

8. Indeed, the inconsistent "statement" in Ryan Operations had been accepted by a court. That case involved a construction company's suit against the manufacturer and suppliers of wood trim that it had used in constructing houses. Prior to filing suit, the construction company had filed a voluntary petition under Chapter 11 of the Bankruptcy Code, which required it to disclose all assets and liabilities, including potential
claims and causes of action. In violation of these r equirements, the construction company's disclosure statement did not mention its claims against the manufacturer and suppliers. The r eoganization plan was confirmed seven months after the construction company brought suit, and the defendants then moved for summary judgment on judicial estoppel grounds. In rejecting the district court's grant of judicial estoppel, we assumed without deciding that failur e to comply with the Bankruptcy Code's disclosure obligations "can support a finding that a plaintiff has asserted inconsistent positions within the meaning of the judicial estoppel doctrine." Id. at 362. But in that case, the parties' initial
inconsistent "statement"--i.e., its failur e to list its claims against the
manufacturer and the suppliers in its originalfiling --had been implicitly accepted by the bankruptcy court when it appr oved the plan of reorganization.

vis a court unless the initial statement was accepted or adopted.[9]

C.

During the course of the Hickok action, the Hospital and the Plan averred that ERISA did not apply to the Plan and that the plaintiffs' claims were barr ed by the statute of limitations. These claims, however, wer e never accepted or adopted by the district court. Accordingly, their later change in position cannot, as a matter of law, constitute bad faith. We therefore hold that the District Court abused its discretion by invoking judicial estoppel.

III.

We also hold in the alternative that the District Court abused its discretion by concluding that judicial estoppel was tailored to address any harm caused by the inconsistent statements in this case. Judicial estoppel "is an `extraordinary remedy' " that should be employed only " `when a party's inconsistent behavior would otherwise result in a miscarriage of justice.' " Ryan Operations G.P. v.

_____

9. We acknowledge that McNemar v. Disney Store, Inc., 91 F.3d 610 (3d Cir. 1996) and Lewandowski v. Amtrak, 882 F.2d 815 (3d Cir. 1989) contain language that could be read as saying that acceptance or adoption is not a prerequisite for the invocation of judicial estoppel, but
we decline to so conclude. First, as noted pr eviously, our duty to follow Cleveland supersedes the requirement that we adhere to prior Third Circuit law. Second, in both McNemar and Lewandowski, the party making the inconsistent statements had succeeded in persuading the original tribunal to adopt his position. See McNemar, 91 F.3d at 615; Lewandowski, 88 F.2d at 817. We also note that McNemar's actual holding is no longer good law after Cleveland  because the two cases involved the same issue. See Klein, 185 F .3d at 108 n.6. Moreover, Lewandowski involved an appeal from a decision of a public law board rather than a district court. We could not have set aside the board's decision unless it had "failed to comply with the provisions of the RLA[,] failed to confine itself to matters within its jurisdiction, or if there was
fraud or corruption." Lewandowski, 882 F .2d at 819. Under such a high standard, we could not have granted the petition even had the board's decision failed to comport with our standards for invoking judicial estoppel.

17

Santiam–Midwest Lumber Co., 81 F.3d 355, 365 (3d Cir. 1996) (quoting Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 419 (3d Cir. 1988) (Stapleton, J., dissenting)). Observing that judicial estoppel "is often the harshest remedy" that a court can impose for inequitable conduct, we have held that a district court may not invoke the doctrine unless: (1) "no sanction established by the Federal Rules or a pertinent statute is up to the task of remedying the damage done by a litigant's malfeasance;" and (2) "the sanction [of judicial estoppel] is tailored to address the harm identified." Klein v. Stahl GMBH & Co. Maschinefabrik, 185 F.3d 98, 108, 110 (3d Cir. 1999) (internal quotation marks and citations omitted). In this case, the District Court failed to conduct the for mer inquiry, and we hold that its conclusion that judicial estoppel was tailored to address any har m caused by the inconsistent representations was not an exercise of sound discretion.

The application of judicial estoppel constitutes an exercise of a court's inherent power to sanction misconduct. See id. at 109. "Because of their very potency, inherent powers must be exercised with r estraint and discretion." Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991). In Chambers, the Supreme Court held that where "bad-faith conduct in the course of litigation[can] be adequately sanctioned under" either the Federal Rules or a particular statute, then a "court ordinarily should rely on" the Rules or the statute "rather than the inher ent power." Id. But, said the Court, "if in the infor med discretion of the court" these other sources of authority ar e not "up to the task, the court may safely rely on its inher ent power." Id. In Klein, we interpreted Chambers to mean "that the Rules are not `up to the task' when they would not pr ovide a district court with the authority to sanction all of the conduct deserving of sanction." 185 F.3d at 109. But we squarely held that before utilizing its inherent powers, a district court should consider whether any Rule- or statute-based sanctions are up to the task. See id. at 110. In this case, the District Court did not consider whether any such sanctions (some of which are set forth in the margin) would

18

have sufficed to deal with any misconduct that occurred in this case.10 That was err or.

Moreover, even had the District Court concluded that use of its inherent sanctioning power was necessary, we would still hold that judicial estoppel was inappr opriate here. In Klein we held that judicial estoppel, like all exercises of a court's inherent sanctioning power, may not be used unless it is "tailored to address the har m." Id. at 111. And we stated that judicial estoppel is not so tailor ed unless, "at a minimum," the party to be estopped took inconsistent positions in bad faith--implicitly recognizing that more would sometimes be required. Id. (emphasis added). We noted the same possibility in Ryan Operations . See 81 F.3d at 365 ("As we have already concluded that the district court erred [in employing judicial estoppel], we need not reach Ryan's argument that [its use] under the circumstances of this case would violate principles of equity and justice. . . . [However, i]n this case, application of judicial estoppel would be unduly harsh and inequitable. While we need not and do not decide whether we would reverse the district court's order on this ground alone, our equitable concerns lend support to our overall conclusion.").

The District Court erred in determining that judicial

_____

10. Federal Rule of Civil Procedure 11 authorizes a court to sanction a party that files "a pleading, written motion, or other paper," if: (1) the document was "presented for an[ ] improper purpose;" (2) the "legal contentions" contained in it were not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;" (3) the document contained "allegations or [other] factual contentions" that did not have evidentiary support or denials of an opponent's"factual contention" without evidentiary support." Federal Rule of Civil Procedure 37 permits a court to sanction certain discovery-related misconduct. And 28 U.S.C. S 1927 provides that "[a]ny attor ney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required . . . to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." We do not intimate that these or any other particular Rule- or statute-based sanctions would have been available or "up to the task" in this case. We hold only that the District Court erred by not considering the issue.

19

estoppel would be tailored to address any harm in this case for two reasons. First, judicial estoppel is not an appropriate response to the only type of harm identified by the court. In its explanation of why judicial estoppel was "appropriate relief in this case," the court faulted the Hospital and the Plan for "abandon[ing]" the fourteen plan participants who were plaintiffs in Hickok, but now seeking to assert precisely the same claims on behalf of fifty-three other participants who were not involved in Hickok. The difficultly with the District Court's reasoning is that judicial estoppel may not be used to punish litigants for how they treat other litigants or third parties;[11] its only legitimate purpose is to remedy an affront to the court's integrity. See, e.g., Ryan Operations, 81 F.3d at 360 ("Judicial estoppel `is intended to protect the courts rather than the litigants.' " (quoting Fleck v. KDI Sylvan Pools, Inc., 981 F.2d 107, 121–22 (3d Cir. 1992))). Because the court's opinion contains no hint that it invoked judicial estoppel to respond to a threat to its own authority, the sanction was not tailor ed to address the harm in this case.

Perhaps more fundamentally, judicial estoppel was simply not tailored to address any malfeasance that may have occurred here. The only potential wr ongdoers are the Hospital and the Plan, and the District Court's application of judicial estoppel did result in the dismissal of their claims against MONY and Bulger. The pr oblem arises because the Hospital and the Plan do not seek personal gain in this case, but rather bring this action solely in their fiduciary capacities on behalf of fifty-thr ee plan participants. It is those participants, not the Hospital and the Plan, that will be harmed by the District Court's dismissal. Even assuming that the Hospital and the Plan acted wrongly in "abandon[ing]" the Hickok plaintiffs, it is difficult to see how equity would be served by punishing fifty-three other plan participants in r eturn.

In sum, the District Court erred in not considering whether any Rule or statute was "up to the task" before

_____

11. The fourteen Plan participants whom the District Court faulted the Hospital and the Plan for abandoning were other litigants in the Hickok litigation and are third parties in this case.

20

deciding to utilize its inherent sanctioning power, and abused its discretion in concluding that judicial estoppel was tailored to address any harm in this case.

IV.

MONY and Bulger advance several alternate gr ounds for affirming the District Court's judgment. They aver that, as a matter of law: (1) the claims against them ar e time-barred; (2) they cannot be held liable under ERISA because they were not fiduciaries of the Plan; (3) the Hospital and the Plan are not entitled to "equitable r elief "; and (4) the Hospital and the Plan cannot prevail on their"prohibited transactions" claim. MONY and Bulger raised these arguments before the District Court, which declined to reach them in light of its judicial estoppel holding. The court did comment, however, that: "An examination of the record in relation to these other gr ounds asserted as bases for summary judgment reveals material issues of fact that would militate against granting summary judgment."

Though we certainly could reach and rule on each of the alternate grounds, we conclude--subject to one exception--that interests of sound judicial administration compel that we remand the case without considering them. 12 This is a complicated case with a voluminous recor d. The able district judge plainly pondered these issues, and at one

_____

12. "When a district court has failed to r each a question below that becomes critical when reviewed on appeal, an appellate court may sometimes resolve the issue on appeal rather than remand to the district court." Hudson United Bank v. LiTenda Mortgage Corp., 142 F.2d 151, 159 (3d Cir. 1998). This practice is appropriate if: (1) "the factual record
is developed;" and (2) "the issues provide purely legal questions[ ] upon which an appellate court exercises plenary r eview." Id. On the other hand, appellate courts should not step in "[w]hen the resolution of an issue requires the exercise of discretion or fact finding." Id. Hudson's requirements are met in this case. Because each party has filed a supplemental appendix, the factual recor d is developed. Had the District Court granted summary judgment on other grounds, our review would have been plenary. And whether a genuine issue of material fact exists presents a purely legal question that does not require or allow a district court to exercise discretion. In light of these facts, we are entitled to consider MONY's alternate grounds.

21

point suggested that there were genuine issues of material fact as to at least some of them. We think it better under these circumstances to let the District Court r eview in the first instance the arguments that neither Bulger nor MONY were ERISA fiduciaries, that the request for equitable relief should be denied, and that the prohibited transactions claim fails as a matter of law. Because the issue is so straightforward, however, we reach and reject MONY's claim that it is entitled to summary judgment on statute of limitations grounds.

ERISA's statute of limitations for fiduciary violations expires on "the earlier of ": (1)"six years after . . . the date of the last action which constituted a part of the breach or violation;" or (2) "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation." The statute also provides, however, that "in the case of fraud or concealment," the period is extended to "six years after the date of discovery of such br each or violation." 29 U.S.C. S 1113. We have described Section 1113 as creating "a general six year statute of limitations, shortened to three years in cases where the plaintiff has actual knowledge, and potentially extended to six years from the date of discovery in cases involving fraud or concealment." Kurz v. Philadelphia Elec. Co. , 96 F.3d 1544, 1551 (3d Cir. 1996).

A.

MONY and Bulger first contend that this suit is barred by ERISA's three year limitations period, which does not begin to run until "the plaintiff ha[s] actual knowledge of the breach or violation," 29 U.S.C. S 1113. We have interpreted the actual knowledge requirement "stringent[ly]." Gluck v. Unisys Corp., 960 F.2d 1168, 1176 (3d Cir . 1992); see also id. ("Section 1113 sets a high standar d for barring claims against fiduciaries prior to the expiration of the section's six-year limitations period."). Because other sections of ERISA demonstrate that "Congress knew how to require constructive knowledge," we have opined that"[w]e do not think that Congress' failure to" pr ovide such a standard "in section 1113 was accidental." Id. Accor dingly, we have held that "actual knowledge . . . requires that a plaintiff have

22

actual knowledge of all material facts necessary to understand that some claim exists," but we have emphasized "that our holding does not mean that the statute of limitations can never begin to run until a plaintiff first consults with a lawyer." Id. at 1177.

MONY and Bulger recite seven facts that they claim show that the Hospital and the Plan had "actual knowledge of the facts necessary to understand that some claim existed" more than three years prior to filing this suit in December 1994. They stress that:

> – Bulger warned [the Hospital] in writing in 1988 about not paying premiums";
>
> – The Hospital "knew of persistent funding problems for a ten year period";
>
> – The Plan Administrator "knew of the financial problems by, at the latest, the late 1980s ";
>
> – The Plan Administrator "knew [the Hospital] could not make the payments by 1987";
>
> – The Hospital "stopped paying benefits in the summer of 1991 and disclosed the problems to the participants";
>
> – The Hospital's Administrator "reported to the [Hospital's] Board before 1991  his conclusion that the Plan could not continue"; and
>
> – The Hospital received a letter fr om Plaintiff 's counsel in the Hickok action "in November 1991 outlining potential ERISA violations and claims."

These facts, MONY and Bulger contend, demonstrate that "by November 1991 (at the latest) [the Hospital and the Plan] had actual knowledge sufficient to understand that (as they allege) a fiduciary duty had been br eached or ERISA provision violated."

We are unpersuaded. "Gluck . . . requires a showing that plaintiffs actually knew not only of the events that occurred which constitute the breach or violation but also that those events supported a claim of breach of fiduciary duty or violation under ERISA." International Union of Elec., Elec.,

23

Salaried, Mach. & Furniture Workers v. Murata Erie N. Am., 980 F.2d 889, 900 (3d Cir. 1992) (emphasis added). Until the Hospital and the Plan had actual knowledge that the Plan might be covered by ERISA, they obviously had no reason to suspect that any actions by MONY or Bulger could support a claim for breach of fiduciary duty under that statute.

The only piece of evidence to which MONY and Bulger point that could have put the Hospital and the Plan on notice that the Plan was covered by ERISA was the letter the Hospital received in 1991 from the lawyer for the Hickok plaintiffs. Though the letter suggested that the Plan was subject to ERISA, two reasons counsel against reading this letter as establishing--as a matter of law--that the Hospital and the Plan thereafter possessed actual knowledge that they had ERISA claims against MONY and Bulger. First, the letter came from an attorney who was threatening to sue the Hospital and the Plan for ERISA violations. Parties are not requir ed to believe every claim hurled by their adversaries, nor are they likely to do so. Second, the letter in no way suggested that the Hospital and the Plan might have an ERISA action against MONY and Bulger. Though MONY and Bulger ar gue that this information was supplied by the other pieces of evidence to which they point to establish actual knowledge, we do not believe that the evidence must, as a matter of law, be read that way. We therefore decline to affirm the District Court's judgment on this alternate ground.

B.

Nor is this suit barred as a matter of law under the six year statute of limitations. ERISA's default limitations period expires "six years after . . . the date of the last action which constituted a part of the breach or violation." 29 U.S.C. S 1113. "[I]n the case of fraud or concealment," however, this period is extended to "six years after the date of discovery of such breach or violation." Id. Even assuming that this suit was not brought within the general six year limitations period, we conclude that there is at least a genuine dispute of material fact as to whether the fraud or concealment exception is applicable.

24

We have interpreted S 1113 "as incorporating the federal doctrine of fraudulent concealment: The statute of limitations is tolled until the plaintiff in the exercise of reasonable diligence discovered or should have discovered the alleged fraud or concealment." Kurz v. Philadelphia Elec. Co., 96 F.3d 1544 (3d Cir. 1996). Section 1113 applies "when a lawsuit has been delayed because the defendant itself has taken steps to hide its breach offiduciary duty," and "[t]he relevant question is . . . not whether the complaint `sounds in concealment,' but rather whether there is evidence that the defendant took affirmative steps to hide its breach of fiduciary duty." Id. It is generally accepted that "there must be actual concealment,--i.e., some trick or contrivance intended to exclude suspicion and prevent injury." Larson v. Northr op Corp., 21 F.3d 1164, 1173 (D.C. Cir. 1994) (quotation marks and citation omitted).

In arguing against the applicability of this exception, MONY and Bulger assert that neither of them concealed anything. But the Hospital and the Plan assert, with support in the record, that "fr om the time of the Plan's creation and throughout its 14-year operation, Defendants consistently deceived the Hospital by misrepr esenting that the Plan was not even subject to ERISA." They also submit, with record support, that although they were "generally aware that MONY, Bulger, and other MONY representatives were replacing various life insurance policies with new policies of the same or different types[,] . . . Bulger falsely represented to Hospital representatives that they would reduce costs while substantially increasing benefits." Finally, Eudora Bennett, the Plan Administrator , claimed in an affidavit that Bulger and Garvey thwarted her efforts "to gain access to information about the operations of the Plan."

Assuming that these allegations are true, which we must for summary judgment purposes, we cannot conclude as a matter of law that no fraud or concealment occurr ed in this case. MONY and Bulger's (alleged) repeated denials that ERISA applied to the Plan could reasonably have hindered the Hospital and the Plan's ability to realize that any breach of ERISA-imposed fiduciary duties had occurred.

25

Further, it is possible that Bulger's (alleged) misrepresentations as to the reasons for replacing the life insurance policies inhibited their capacity to discover that the Plan had been imprudently designed. Finally, the (alleged) conduct of Bulger and Garvey may have actively impeded Bennett's ability to discover facts that could have led her to conclude that fiduciary violations had taken place.

MONY and Bulger offer two responses. They aver that because " `[t]he problems sur faced soon after the establishment of the Plan,' " "the alleged design defects constituted information readily available to" the Hospital and the Plan. But MONY and Bulger provide no citations to the record, and fail to explain why the mere existence of problems means that the Hospital and the Plan were on notice that ERISA applied to the Plan or that it was designed in violation of ERISA-imposed fiduciary duties. Because conclusory allegations unsupported by explanation or facts in the record do not suffice to meet a movant's burden of persuasion, see 11 James Wm. Moore et al., Moore's Federal Practice S 56.13[1] (3d ed. 2000), we conclude that MONY and Bulger cannot prevail on this point.

Finally, MONY and Bulger submit that there was no "reasonable reliance as is requir ed to trigger the fraud or concealment exception." They contend that the Hospital and the Plan "did not delay this lawsuit because of misrepresentations; instead, they delayed as long as possible to avoid subjecting themselves to liability and filed suit only after Hickok was resolved and they could no longer hope to avoid similar claims." MONY and Bulger point to no undisputed facts that demonstrate why the Hospital and the Plan brought this case when they did, and, accordingly, MONY and Bulger are not entitled to summary judgment on this ground. We ther efore hold that MONY and Bulger are not entitled to summary judgment on statute of limitations grounds.

For the foregoing reasons, the judgment of the District Court will be reversed and this case remanded for further proceedings consistent with this opinion.

26

A True Copy:
Teste:

     Clerk of the United States Court of Appeals
     for the Third Circuit

27