NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2826
_____

HAINES & KIBBLEHOUSE, INC.,
                                        Appellant

v.

BALFOUR BEATTY CONTRUCTION, INC.


_____


On Appeal from the United States District Court
for the  Eastern District of Pennsylvania
District Court No. 5-08-cv-05505
District Judge: The Honorable Stewart Dalzell

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 10, 2014

Before: SMITH, SHWARTZ, and SCIRICA, *Circuit Judges*

(Filed: February 3, 2014)
_____

OPINION
_____

SMITH, *Circuit Judge.*

Haines & Kibblehouse, Inc. ("H&K") appeals from an order of the District

Court dismissing its complaint pursuant to the doctrine of judicial estoppel. For the

reasons expressed below, we will affirm.

This case comes before us after traversing a complex procedural path, which the District Court aptly characterized as "labyrinthian." Balfour Beatty Construction, Inc. ("Balfour") contracted with the Commonwealth of Pennsylvania's Department of Transportation ("PennDOT") to be the general contractor for the construction of the Route 222 Bypass project (the "Project"). On April 21, 2004, Balfour entered into a subcontract with H&K to perform certain paving, subbase, and utility work for the Project. Although the terms of the contract between Balfour and PennDOT required that the Project be completed by September 18, 2006, significant delays pushed the eventual completion date back to late 2007.

On September 18, 2006 (the original date the Project was to be completed), H&K filed a five-count complaint against Balfour in the Court of Common Pleas of Montgomery County, Pennsylvania ("*Haines I*"), alleging, *inter alia*, that Balfour's failure to complete certain predecessor work with diligence caused H&K to incur significant additional costs and other damages. Balfour removed *Haines I* to the United States District Court for the Eastern District of Pennsylvania and filed a motion to dismiss. On June 7, 2007, the District Court dismissed four of H&K's claims without prejudice and remanded the only remaining claim, one for declaratory relief, back to state court.

The District Court's decision to dismiss certain counts of the *Haines I*

complaint was based on its determination that, under the terms of the Subcontract, H&K could not pursue its claims against Balfour unless (or until) Balfour first sought compensation from PennDOT—a predicate event which had not yet occurred. In reaching this decision, the District Court relied on Article 2.2.20 of the Subcontract, explaining:

> The plain meaning of Article 2.2.20 is that any claim that the subcontractor [H&K] has for performing extra work or arising out of a delay or any other claim, *whether it be against PennDot or [Balfour]* must first be compensated by the Owner (PennDot) to the Contractor [Balfour] before [H&K] can bring suit against [Balfour].[1]

*Haines & Kibblehouse, Inc. v. Balfour Beatty Constr., Inc.*, No. 2:06-cv-4807, slip op. at 4 (E.D. Pa. June 7, 2007) (emphasis in original).

Following entry of the dismissal order, H&K filed a motion for

---

[1] Article 2.2.20 provides in full:

> Condition Precedent. Contractor's receipt of payment from Owner for each progress payment, final payment, change, extra work, delay, claim or each and every other request for payment or compensation by Subcontractor shall be an absolute condition precedent to any duty or obligation of Contractor to make any payment to Subcontractor pursuant to any application for payment or compensation. Such payment by Owner to Contractor is further an absolute condition precedent to Subcontractor filing or bringing against Contractor any action for nonpayment of any request for payment or compensation by way of arbitration, mediation, Federal or State Court action, or through any other forum for resolution of disputes. Contractor and Subcontractor hereby expressly acknowledge and agree that the Contractor's surety is an intended third party beneficiary of the Article. In the event any action is asserted by Subcontractor against Contractor or its surety for nonpayment, this Article shall be a complete defense to nonpayment by Contractor and surety pending the occurrence of payment from Owner to Contractor.

3

reconsideration and simultaneously requested permission to take an interlocutory appeal. Both requests were denied. H&K then filed a Notice of Appeal with the Third Circuit on August 22, 2007. Upon receipt of the Notice of Appeal, the Clerk of Court instructed the parties to comment on the Court's jurisdiction, and, more specifically, to discuss whether the District Court had issued a final order subject to appellate review. In a letter brief dated September 5, 2007, H&K responded that the District Court's dismissal was indeed final. H&K claimed that it was "stand[ing] on the allegations in the [*Haines I*] Complaint" because there was "no way for [it] to cure the 'defect' that the District Court found." Further, H&K claimed that the condition precedent, as the District Court defined it, "will never be achieved" because Balfour has no legal avenue to seek compensation from PennDOT for its own breach of the Subcontract. Accordingly, H&K asserted that it "will never be able to re-file its Complaint."

On January 30, 2008, this Court issued an order stating its intention to address the jurisdictional question during its review of the case on the merits.[2] The Court, however, did not immediately issue a briefing schedule because the parties were engaged in our Circuit's mandatory mediation program. After nearly eight

[2] Although the Court determined that it was not appropriate to immediately dismiss the appeal based on a jurisdictional defect, the Court cautioned that its decision did "not represent a finding that the Court has jurisdiction to hear the appeal in this case." Order, *Haines & Kibblehouse, Inc. v. Balfour Beatty Constr., Inc.*, No 07-3520 (3d Cir. Jan. 30, 2008).

4

months of mediation, H&K sought to terminate the mediation process and to proceed with its appeal. In response, this Court issued a briefing schedule.

Before either party submitted an appellate brief, however, H&K voluntarily dismissed its *Haines I* appeal and, in its place, filed a new (second) complaint in the Montgomery County Court of Common Pleas ("*Haines II*").[3] H&K's complaint in *Haines II* named the same parties, asserted the same claims, and involved exactly the same set of facts alleged in *Haines I*. On November 24, 2008, Balfour removed *Haines II* to United States District Court for the Eastern District of Pennsylvania, and then moved to dismiss based on claim preclusion and judicial estoppel. Significantly, Balfour argued that H&K was barred by the doctrine of judicial estoppel from claiming that the District Court had not issued a final order in *Haines I*, particularly in light of H&K's decision to stand on its complaint in the *Haines I* appeal and its representations to this Court that it would "never" be able to re-file its complaint.

In response, H&K argued that its representations regarding the finality of the District Court's dismissal in *Haines I* were made before it discovered that Balfour

___

[3] H&K filed its complaint in *Haines II* on November 4, 2008, while *Haines I* was still pending before the Third Circuit. On November 5, 2008 (the day after *Haines II* was filed), H&K sent a two-sentence letter to the Office of the Clerk informally seeking to "withdraw" its *Haines I* appeal. However, because this effort was procedurally improper, the Court did not take any action on H&K's request. Balfour subsequently moved to dismiss the *Haines I* appeal on December 3, 2008. Acknowledging its mistake, H&K then appropriately filed a motion to voluntarily dismiss its appeal, which this Court granted on January 22, 2009. Thus, the two actions were pending concurrently for a period of at least two-and-a-half months.

5

had failed to include H&K's claims in a complaint that Balfour had made to the Pennsylvania Board of Claims on July 11, 2007 (the "Board of Claims Complaint"), which H&K did not receive a copy of until September 17, 2007 (twelve days after it filed its jurisdictional letter brief in the *Haines I* appeal). Balfour's Board of Claims Complaint alleged that PennDOT caused Balfour to incur additional costs and delays on the Project. The complaint, however, did not mention H&K by name, assert H&K's claims against PennDOT, or seek payment for claims arising out of Balfour's alleged breach of the Subcontract.

H&K claims that only after reviewing the Board of Claims Complaint "and thereafter conduct[ing] due diligence over a 12 month period" did it determine that Balfour had waived its right to rely on Article 2.2.20 of the Subcontract. In its brief opposing Balfour's motion to dismiss, H&K claimed that this discovery was a "watershed development" in the context of its *Haines I* appeal because it showed that the condition precedent articulated in the District Court's June 2007 Order had not been met. This, H&K argued, "eviscerated the factual underpinnings" of the June 2007 Order, thereby rendering that order moot.

The District Court disagreed, and, on June 1, 2011, entered an order dismissing the *Haines II* complaint based on judicial estoppel. Applying the three-part test set out in *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003), the District Court found that

6

dismissal on the basis of judicial estoppel was appropriate because H&K took irreconcilably inconsistent positions, acted in bad faith, and no lesser sanction was appropriate. The Court rejected H&K's argument that its discovery about the contents of Balfour's Board of Claims Complaint somehow permitted H&K to abandon its *Haines I* appeal in favor of filing *Haines II* in state court. The Court explained:

> H&K . . . argues that it changed its position when it allegedly learned that Balfour had filed a claim for compensation from PennDot without preserving H&K's claims. But this later-acquired knowledge was of no significance because all that Balfour had done was precisely what H&K argued to the Court of Appeals Balfour would do—seek compensation for its own claims against PennDot <u>without</u> including H&K's claims.

*Haines & Kibblehouse, Inc. v. Balfour Beatty Constr., Inc.*, 789 F. Supp. 2d 622, 633 (E.D. Pa. 2011) (emphasis in original). H&K timely appealed.[4]

The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a). This Court has appellate jurisdiction under 28 U.S.C. § 1291. A district court's decision to invoke the doctrine of judicial estoppel "is reviewed only for abuse of discretion." *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 780 (3d Cir. 2001). "[A] court 'abuses its discretion when its ruling is

---

[4] On June 15, 2011, H&K timely filed a motion asking the District Court to reconsider its June 1, 2011 Order. While its motion for reconsideration was pending, H&K also filed a Notice of Appeal of the June 1, 2011 Order, which is the subject of this appeal. This *Haines II* appeal was then stayed pending the outcome of the motion for reconsideration, which the District Court eventually denied by order dated November 19, 2012.

founded on an error of law or a misapplication of law to the facts.'" *Id.* (quoting *In re O'Brien*, 188 F.3d 116, 122 (3d Cir. 1999)).

Three requirements must be satisfied before a district court may properly apply the doctrine of judicial estoppel:

> First, the party to be estopped must have taken two positions that are *irreconcilably inconsistent*. Second, judicial estoppel is unwarranted unless the party *changed his or her position "in bad faith*—i.e., with intent to play fast and loose with the court." Finally, a district court may not employ judicial estoppel unless it is "tailored to address the harm identified" and *no lesser sanction would adequately remedy the damage* done by the litigant's misconduct.

*Krystal Cadillac*, 337 F.3d at 319–20 (quoting *Montrose Med. Grp.*, 243 F.3d at 780) (emphasis in original). Additionally, the party to be estopped must have "a meaningful opportunity to provide an explanation for its changed position." *Id.* at 320. We agree with the District Court that all the requirements for applying estoppel have been met here.

First, H&K took two irreconcilably inconsistent positions when it emphatically argued in its *Haines I* appeal that it would "never be able to refile its complaint," but then—after *Haines I* languished on our docket for more than a year and the parties engaged in a prolonged mediation process—proceeded to file a new (and nearly identical) complaint in the Montgomery County Court of Common Pleas. We are not persuaded by H&K's attempt to square these inconsistent positions by relying on its after-the-fact discovery that Balfour failed to assert

8

H&K's claims in its Board of Claims Complaint. As the District Court explained, H&K could hardly have been surprised to learn the contents of Balfour's Board of Claims Complaint since Balfour did precisely what H&K told this Court in *Haines I* Balfour would do—seek compensation only for its own claims.

Second, the District Court did not abuse its discretion in finding that H&K acted in bad faith. Although H&K received a copy of the Board of Claims Complaint on September 17, 2007, it did not first seek to withdraw its *Haines I* appeal until November 5, 2008. Thus, as the District Court pointed out, H&K had knowledge of the contents of Balfour's Board of Claims Complaint more than a year before it first attempted to withdraw its appeal. H&K lamely suggests this time was spent "review[ing] the Board of Claims Complaint" and "thereafter conduct[ing] due diligence." But we fail to see how H&K needed to conduct due diligence over a twelve month period in order to understand how Balfour's complaint against PennDOT somehow impacted H&K's rights.

Further, the extended delay is not the only factor supporting an inference of bad faith. As the District Court explained, H&K was motivated to drag its heels so it could "avail[] itself of the benefits of pressure on Balfour" created by "a pending appeal, the Third Circuit's mandatory mediation program and the obtaining of a[n appellate] briefing schedule." These factors support the District Court's imposition of a rebuttable inference of bad faith. *See Krystal Cadillac-Oldsmobile*, 337 F.3d at

321 ("[A] rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose.") (citing *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416–18 (3d Cir. 1988)).

Finally, dismissal of *Haines II* is the appropriate sanction for H&K's conduct. We agree with the District Court that "any lesser sanction . . . would still reward H&K for duplicitous conduct in the course of its appeals process" and "[m]ore seriously, . . . would not compensate the [various] courts for their waste of scarce judicial resources."

Finally, we are satisfied that H&K received a full and fair opportunity to be heard, as it had multiple opportunities to address the issue of judicial estoppel before the District Court. Although H&K argues it was entitled to an evidentiary hearing on the issue of bad faith, "a district court need not always conduct an evidentiary hearing before finding the existence of bad faith for judicial estoppel purposes." *Montrose Med. Grp.*, 243 F.3d at 780 n.5 (citations omitted). Here, the record was sufficient for the District Court to conclude that H&K affirmatively misrepresented its procedural position and "played fast and loose with the courts." *Id.* at 780. Accordingly, we will affirm the District Court's order dismissing the complaint based on judicial estoppel.