

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-30-2002

# Coast Auto Grp Ltd v. VW Credit Inc

Precedential or Non-Precedential:

Docket 0-5200

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Coast Auto Grp Ltd v. VW Credit Inc" (2002). *2002 Decisions.* Paper 71.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/71

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 00-5200
_____

COAST AUTOMOTIVE GROUP, LTD.,
a Delaware Corporation d/b/a/ TSE MOTOR CARS,

Appellant

v.

VW CREDIT, INC., a Corporation; VOLKSWAGEN OF AMERICA,
a Corporation; AUDI OF AMERICA, a Corporation; MARGE YOST;
MICHAEL RUECKERT; STEPHEN JOHNSON

_____

On Appeal from the United States District Court
for the District of New Jersey

District Court Judge: The Honorable Garrett E. Brown, Jr.
(D.C. Civil No. 97-2601(GEB))
_____

Argued on December 7, 2001

Before: MANSMANN, ROTH, and FUENTES, Circuit Judges

(Opinion Filed:   January 29, 2002)
_____

OPINION OF THE COURT
_____

FUENTES, Circuit Judge:

This is an appeal by Plaintiff Coast Automotive Group, Ltd. ("Coast") from a grant of summary judgment in favor of Defendant VW Credit, Inc and several of its employees. (collectively "VCI").  Coast's primary contention on appeal is that the District Court improperly invoked judicial estoppel to dismiss its claims.  Because we conclude that the District Judge failed to apply the standards for the use of judicial estoppel in accordance with this Court's decision in Montrose Med. Group Participating Sav. Plan et al. v. Bulger, 243 F.3d 773 (3d Cir. 2001), we vacate as to claims dismissed on the basis of judicial estoppel.  However, we hold that the District Court did not err in any of its other findings, and therefore affirm the grant of summary judgment on claims dismissed on a basis independent of judicial estoppel.

I

Coast owns new vehicle dealership franchises in Toms River, New Jersey.  VCI provided Coast with floor plan financing beginning in 1991.  Under a series of Master Security Agreements ("Agreements"), VCI advanced funds to Coast for the purchase of vehicle inventory and Coast granted VCI a security interest in the vehicles, the proceeds from sale of the vehicles, and in other assets of Coast.  Coast paid interest on the advances to VCI, and the agreements stated that when Coast sold a vehicle from inventory, the principal on the advance would be "promptly and fully paid off" to VCI.  The agreements dictated that Coast would hold any unpaid and past due indebtedness "in trust" for VCI, but they did not specify a deadline or time period for payment of principal.  The agreements contained default provisions under which VCI had the right to terminate the Agreement, refuse to advance additional funds, and accelerate and declare all debt immediately due if Coast defaulted on its obligations.

On December 12, 1995, VCI called Coast into default and, under the default provisions, terminated its credit line with Coast and accelerated the remaining outstanding balance of Coast's debt to VCI, a debt totaling over $6 million.  VCI also filed a complaint in the Superior Court of New Jersey, Chancery Division against Coast,

Coast President Tamim Shansab, and others.  VCI alleged that Coast had failed to pay off
48 vehicles in a timely fashion, and VCI sought to force Coast to repay its total debt and
enjoin Coast from disposing of VCI's collateral.  Three days later on December 15, 1995,
Coast filed a Chapter 11 petition in the United States Bankruptcy Court for the District of
New Jersey.

On December 13, 1995, at a hearing in the New Jersey Superior Court matter, the
court engaged in a colloquy regarding Coast's debt status with Coast's counsel Richard
S. Mazawey:

> THE COURT:    Well, isn't the company out of trust as they say?
>
> MAZAWEY:  Yes it is, Judge, at the present.
>
> ...
>
> MAZAWEY:  And, what we're saying is, is that due to the diligent notice
> and the good faith of the Defendant, in light of that
> circumstance, in light of there being a short fall in trust,
> which we disagree, your Honor, as to the extent of the short
> fall.
>
> THE COURT:    I know, but if you say there's 300,000 but it's a million-four,
> well that still leaves a million-one.
>
> MAZAWEY:  Well, in actuality, Judge, there's just about 700,000...

VCI App. at 304-05.  In a hearing in the Bankruptcy Court on January 18, 1996, Shansab
testified concerning the state of Coast's indebtedness to VCI in response to questioning
by the Bankruptcy Judge, the Honorable Stephen A. Stripp:

> THE COURT:    You didn't  you didn't testify because you weren't asked
> whether  the Debtor was in default to VCI on the floor
> plan line when  VCI took the action that it took in State
> Court, was it?
>
> SHANSAB:    Was I in default, sir?
> THE COURT:    Yes.
> SHANSAB:    Yes.
>
> ...
>
> THE COURT:    ...What was the nature of the default?
>
> SHANSAB:    Principal payments had not been made on units. ...
>
> THE COURT:    Have you ever heard the term, "out of trust?"

                    SHANSAB:          Yes, Your Honor
...
                    THE COURT:        What does it mean to you?
                    SHANSAB:          It means that you have   sold a
car and you have not remitted
                    payment in time.
                    THE COURT:        Is that what transpired?  Was that
part of the default here of
                    the Debtor with respect to this   working capital
line?
                    SHANSAB:          To the floor plan line you mean?
                    THE COURT:        Floor plan line.
                    SHANSAB:          Yes, Your Honor.
                    THE COURT:        And how much were you out of
trust?
                    SHANSAB:          The day I sat down with the   with
the gentleman from VCI,
                    the calculations that we came up with were in the
700,000
                    range.

VCI App. at 324-25.  The next day, Shansab and his bankruptcy counsel Gary
Marks
made further statements regarding Coast's debt status under cross-
examination by VCI
counsel Stephen Ryan:
                    RYAN:             Okay.  In fact, you'd sold some
cars to customers, Coast had
                    received payment from third party finance sources or
from the
                    buyer directly for those purchases, is that right?
                    SHANSAB:          That is correct.
                    RYAN:             Coast didn't make any payment to
VCI for the sale of those
                    cars did it?
                    THE COURT:        Isn't it stipulated that there is
$700,000 out of trust, Mr.
                    Marks?
                    MARKS:            I believe that was Mr. Shansad's
[sic] testimony yesterday.  I
                    don't know that they have stipulated to that amount,
but that
                    was his testimony.
                    THE COURT:        All right.
                    RYAN:             Judge, we would stipulate that
there are out of trust sales and
                    that is what I'm trying to establish
                    THE COURT:        Well, it is stipulated.  So let's
not waste time going over facts
                    that are stipulated.  He stipulates that he is out of
trust.
                    RYAN:             You were out of trust with VCI
before you filed your petition
                    in Bankruptcy?

                    SHANSAB:        That is correct.

VCI App. at 330-31.

Several months later, in a deposition for the New Jersey Superior Court proceedings on July 23, 1996, Shansab attempted to explain that his prior testimony to the Bankruptcy Court was based on information provided to him by VCI and did not reflect his personal understanding that Coast had defaulted or was "out of trust":

                    STEWART:        Do you understand "out of trust" to mean you sold a car and
                    you have not remitted payment in time?  Is that your
                    understanding of "out of trust," sir?
                    SHANSAB:        My understanding is that I have a line of credit with VCI, and
                    I don't believe I've ever been out of trust.
                    STEWART:        Do you recall testifying under oath on January 18, 1996?
     ... [Shansab reviews a transcript of the Bankruptcy Court testimony] ...
                    SHANSAB:        To me out of trust in this case is when you can't trust your
                    lender, and in this case I'm certainly   VCI is certainly out of
                    trust with me.
                    STEWART:        Sir, is this the answer that you gave to Judge Stripp? [reads
                    Shansab the bankruptcy testimony]... You said that right? ...
                    SHANSAB:        This happened under extreme pressure, and at that time I had
                    no information as to what VCI's actions had been up to that
                    point, and, you know, when I testified here, all I had to rely
                    on was what Steve Johnson and VCI had been telling me up
                    to that point.
                    STEWART:        Based on what Steve Johnson had been telling you up to that
                    point, did you understand that you were out of trust?
                    SHANSAB:        I have never been out of trust, period...
     ...
                    STEWART:        Sir, the sworn testimony that you gave to Judge Stripp ... with
                    respect to out of trust, that's not accurate, is it?
                    SHANSAB:        I didn't say that, Mr. Stewart.  I said that everything I had to
                    rely on at that point is the word of a Steven Johnson from
                    VCI...

     ...

> STEWART: Did you state anywhere in your testimony to Judge Stripp that you were relying upon the information provided by Steve Johnson?
>
> SHANSAB: I don't believe that that question ever came up...
>
>     ...
>
> STEWART: But you did testify to Judge Stripp under oath that the calculations that you came up with Steve Johnson, that it was that you were out of trust in the $700,000 range?
>
> SHANSAB: I never calculated that. That was Steven Johnson –– I've answered the question that we came up with that. I never sat down with Steven Johnson and came up with that calculation like that...
>
> I did not sit down with Steven Johnson, go over any figures.
> He sat down, went over his own figures.

Coast App. at 602a–606a.

On January 21, 1997, Coast filed an adversary proceeding in the Bankruptcy Court against VCI, several VCI employees, and VCI's parent companies Volkswagen of America (VOA) and Audi of America (AOA). Because Coast demanded a jury trial, the case was referred to the District Court for the District of New Jersey. Coast's Complaint contained 16 claims against VCI, all stemming from the basic allegation that VCI's call of Coast into default was wrongful and constituted a breach of the Agreements.

VCI filed a motion for summary judgment on all claims against it on November 11, 1997. Among other filings in response to VCI's motion, Coast submitted a Certification of Tamim Shansab in which Shansab reiterated the explanation of his Bankruptcy Court testimony that he provided in his state court deposition. See Coast App. at 135a–139a (Certification of Tamim Shansab).

In an order issued on April 24, 1998, the District Court granted VCI summary judgment on Counts 1–13 and 16 of Coast's complaint. Judge Brown invoked the doctrine of judicial estoppel to find Coast had defaulted on its obligations under the

Agreements.  The parties did not brief judicial estoppel, nor did the issue arise in oral
argument before the District Court.  Yet the court applied judicial estoppel to bar Coast
from claiming that it was not in default because Shansab and Coast's counsel had
represented in the bankruptcy hearing and the state court hearing that it was in default
and "out of trust."

The court concluded that "[t]he record clearly indicates that Coast had defaulted
on the agreements by failing to make payments to VCI and was consequently 'out of
trust.'"  Coast Automotive Group v. VW Credit, Inc. et al., Civ. No. 97-2601(GEB), at 5-
6 (D.N.J. Apr. 24, 1998) (hereinafter "Coast I") (citing Shansab's testimony before the
Bankruptcy Court and counsel's statements to the Bankruptcy Court and the New Jersey
Superior Court).  In a footnote, the court considered Shansab's explanation of his
Bankruptcy Court statements in his state court deposition and in the summary judgment
certification, but decided that because Shansab contradicted himself on the meaning of
"out of trust," such inconsistent statements could not be used to create material issues of
fact sufficient to preclude summary judgment.  Id. at 6 n.2.

In finding that Coast defaulted under the Agreements, the court stated:

> Thus, under default provisions in the agreements, VCI was entitled to
> declare all of Coast's indebtedness payable on demand.  Plaintiff avers that
> Coast had a grace period in which to make its payments under the
> agreements, and that in the past, Coast had made payments on principal
> advanced between 5 to 28 days from the date of a vehicle's sale.  However,
> as the record clearly indicates, plaintiff had defaulted on the agreements
> with VCI and plaintiff may not now contradict its prior assertions and
> stipulations in an attempt to defeat summary judgment.

"Coast I" at 6 (emphasis added).  In a footnote appended to end of this passage, the court
explained that it made this finding of default under the doctrine of judicial estoppel:

> The doctrine of judicial estoppel "serves a consistently clear and undisputed
> jurisprudential purpose: to protect the integrity of the courts."  See

McNemar v. Disney Store, Inc., 91 F.3d 610, 616 (3d Cir. 1996), cert. denied 117 S.Ct. 958 (1997). This doctrine, which "is an equitable doctrine invoked by a court at its discretion," see id. at 617, precludes a party from assuming a position in a legal proceeding that contradicts or is inconsistent with a previously asserted position. See Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996). While judicial estoppel is not intended to eliminate all inconsistencies, it is designed to prevent litigants from "playing fast and loose with the courts." See id. Thus, as plaintiff had stipulated in the Bankruptcy proceedings that Coast was out of trust, plaintiff may not assert a contrary position before this Court at this time.

Coast I at 6 n.3 (emphasis added).

The judicial estoppel finding of default served as the basis for dismissal of several of Coast's claims, while summary judgment was granted on other claims on a basis independent of judicial estoppel. In a second summary judgment order on October 6, 1999, the District Court granted VCI summary judgment on the remaining two claims against VCI  Counts 14 and 15. See Coast Automotive Group v. VW Credit, Inc. et al., Civ. No. 97-2601(GEB), at 6 (D.N.J. October 6, 1999) (hereinafter "Coast II"). In dismissing these discrimination claims, the court relied heavily on the finding in its previous order that based on the application of judicial estoppel, Coast had defaulted on the Agreements and therefore VCI had the right to accelerate Coast's debt and terminate future lending under the default provisions.

VCI filed a motion for certification of the two summary judgment orders as a final judgment under Federal Rule of Civil Procedure 54(b). The court granted this motion on January 26, 2000, and denied Coast's motion to stay this order on February 25, 2000. This appeal followed, and because the summary judgment orders were properly certified as a final judgment, we have jurisdiction under 28 U.S.C.  1291.

II

A.

Coast primarily argues on appeal that the District Court erred in applying judicial estoppel sua sponte and without making the necessary findings and analysis under the settled law of this Court. While we exercise plenary review over grants of summary judgment, we examine the use of judicial estoppel for abuse of discretion. "Though a district court's ultimate decision to invoke the doctrine is reviewed only for abuse of discretion... a court 'abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts.'" Montrose Med. Group Participating Sav. Plan v. Bulger et al., 243 F.3d 773, 780 (3d Cir. 2001) (Becker, J.) (quotations omitted).

In Montrose, we reiterated and explained the requirements which must be met before a district court may properly invoke judicial estoppel:

> Judicial estoppel may be imposed only if: (1) the party to be estopped is asserting a position that is irreconcilably inconsistent with one he or she asserted in a prior proceeding; (2) the party changed his or her position in bad faith, i.e., in a culpable manner threatening to the court's authority or integrity; and (3) the use of judicial estoppel is tailored to address the affront to the court's authority or integrity.

Montrose, 243 F.3d at 777-78. A district court may not invoke judicial estoppel without conducting these three inquiries. Id. at 780 n.4 (discussing third element). In Montrose we also held that "a party has not displayed bad faith for judicial estoppel purposes if the initial claim was never accepted or adopted by a court or agency." Id. at 778. We further elaborated on the bad faith requirement and explained that a specific finding of bad faith must be made:

> Inconsistencies are not sanctionable unless a litigant has taken one or both positions "in bad faith--i.e., with intent to play fast and loose with the court." Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 361 (3d Cir.1996). A finding of bad faith "must be based on more than" the existence of an inconsistency, Klein v. Stahl GMBH & Co. Maschinefabrik, 185 F.3d 98, 111 (3d Cir.1999) (emphasis added); indeed,

a litigant has not acted in "bad faith" for judicial estoppel purposes unless
two requirements are met. First, he or she must have behaved in a manner
that is somehow culpable. See Ryan Operations, 81 F.3d at 362 (stating that
judicial estoppel may not be employed unless "'intentional self
contradiction is ... used as a means of obtaining unfair advantage'" (quoting
Scarano v. Central R. Co. of N.J., 203 F.2d 510, 513 (3d Cir.1953)
(emphasis added))); id. ("An inconsistent argument sufficient to invoke
judicial estoppel must be attributable to intentional wrongdoing." (emphasis
added)); see also In re Chambers Dev. Co. Inc., 148 F.3d 214, 229 (3d
Cir.1998) (quoting this language from Ryan Operations).

Second, a litigant may not be estopped unless he or she has engaged in
culpable behavior vis-a-vis the court.... Accordingly, judicial estoppel may
not be employed unless a litigant's culpable conduct has assaulted the
dignity or authority of the court.

Montrose, 243 F.3d at 780-81 (emphasis added).

With regard to the third prong   tailoring application of the doctrine to the specific
harm   we stated:

Observing that judicial estoppel "is often the harshest remedy" that a court
can impose for inequitable conduct, we have held that a district court may
not invoke the doctrine unless: (1) "no sanction established by the Federal
Rules or a pertinent statute is up to the task of remedying the damage done
by a litigant's malfeasance;" and (2) "the sanction [of judicial estoppel] is
tailored to address the harm identified." Klein v. Stahl GMBH & Co.
Maschinefabrik, 185 F.3d 98, 108, 110 (3d Cir.1999) (internal quotation
marks and citations omitted).

Montrose, 243 F.3d at 784.
Finally, we expressed particular concern in Montrose with the sua sponte
application of judicial estoppel:

We have held that a district court need not always conduct an evidentiary

hearing before finding the existence of bad faith for judicial estoppel purposes... but two precepts are nevertheless clear. First, a court considering the use of judicial estoppel should ensure that the party to be estopped has been given a meaningful opportunity to provide "an explanation" for its changed position. Cleveland v. Policy Management Sys., 526 U.S. 795, 807 (1999). Second, though a court may sometimes "discern" bad faith without holding an evidentiary hearing, it may not do so if the ultimate finding of bad faith cannot be reached without first resolving genuine disputes as to the underlying facts.

Montrose, 243 F.3d at 780 n.5.

## B.

In this case, the District Court applied judicial estoppel against Coast sua sponte and without the complete analysis required by this Court. At most, the court found only that the inconsistency prong of the judicial estoppel test was satisfied, as the court held that Shansab stated to the Bankruptcy Court that Coast was "out of trust" and in default, and that his later statements insufficiently explained that testimony. The court concluded that Coast could not argue on summary judgment that it was not in default, and therefore many of Coast's claims failed because VCI properly exercised its rights under the default provisions in the Agreement. However, to invoke judicial estoppel, a court must do more than merely find that a party advanced inconsistent positions to the court. The District Court here failed to engage in the requisite analysis and make the necessary findings that Coast changed its position in bad faith and that the application of judicial estoppel was specifically tailored to address the harm caused by Coast's alleged inconsistencies. Additionally, in raising the issue sua sponte, the court failed to allow the parties to brief the issue and inform the court's analysis, as suggested by the Supreme Court and by this Court. Therefore, we conclude that the District Court abused its discretion by invoking the doctrine sua sponte.

The court made no finding that Coast changed its position in a bad faith attempt to

"assault the dignity or authority" of the court. In its brief footnote explaining its invocation of judicial estoppel, the court indeed quoted our statement in Ryan Operations that judicial estoppel is designed to prevent litigants from "playing fast and loose with the courts." Coast I at 6 n.3 (quoting Ryan Operations, 81 F.3d at 358). We have noted that "playing fast and loose with the courts" is a factor in a finding of bad faith. See Montrose, 243 F.3d at 780-81; Ryan Operations, 81 F.3d at 358. However, simply quoting this language without any explanation or analysis of how Coast's actions rose to the level of "playing fast and loose" is insufficient to invoke the harsh sanction of judicial estoppel. No finding of culpability, intentional self contradiction, or intentional wrongdoing was made. We counseled in Montrose that a mere finding of inconsistency, without more, fails to fulfill the bad faith requirement. See id. at 781. Furthermore, the court also made no explicit finding that Shansab's and counsel's prior statements were accepted or adopted by the court. The District Court failed to apply the law to the facts here, and therefore abused its discretion.

Secondly, the District Court did not consider whether its application of judicial estoppel was tailored to the harm caused by Coast and whether "no lesser sanction would adequately remedy the damage done by litigant's misconduct." Montrose, 243 F.3d at 784. The court failed to assess whether a strong instruction to the jury that it should consider the prior inconsistent statements or some other measure short of judicial estoppel could have addressed the harm. We express no opinion whether the court's application was in fact narrowly tailored, but we find that the court itself should have conducted such an inquiry and provided its reasoning in the first instance.

Finally, the District Court invoked judicial estoppel to dismiss many of Coast's claims even though the parties did not brief the issue nor did it arise at oral argument. The parties were not on notice that judicial estoppel would be applied, and Coast was not allowed the opportunity to argue lack of bad faith or contest any other factor in the application of the doctrine. In Montrose, we warned that courts should be wary of just

such a sua sponte application of the doctrine. See Montrose, 243 F.3d at 780 n.5.

Further, as we stated in Montrose:

> Judicial estoppel "is an 'extraordinary remedy'" that should be employed only "'when a party's inconsistent behavior would otherwise result in a miscarriage of justice.'" Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 365 (3d Cir.1996) (quoting Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 419 (3d Cir.1988) (Stapleton, J., dissenting)).

Montrose, 243 F.3d at 784. Especially because judicial estoppel is such a harsh remedy as this case demonstrates and should be used only in limited circumstances, the court should have invited briefing and argument before deploying the doctrine to dismiss many of Coast's claims.

We understand that the District Court did not have the benefit of this Court's decision in Montrose when it issued its summary judgment orders here. However, Montrose was based squarely on other decisions of this Court which also required the same analysis and were available at the time of the District Court's ruling. See, e.g., Ryan Operations, 81 F.3d at 361 (requiring finding that positions taken by party to be estopped are inconsistent and that the party changed her position in bad faith). Indeed, the District Court quoted from Ryan Operations but otherwise failed to follow its requirements. Because judicial estoppel is an "extraordinary remedy," it should not be invoked sua sponte without the detailed, multi-step analysis Montrose specifically requires. We find that the court erred in applying judicial estoppel in this case.

## III

While we conclude that the District Court abused its discretion in applying judicial estoppel, we find no error in the District Court's consideration of any of the other issues decided on summary judgment. Therefore, we only vacate on those claims for which the judicial estoppel finding of Coast's default formed the sole basis for dismissal. Those claims on which the District Court granted summary judgment to VCI on other grounds

are affirmed.  Below we briefly explain the District Court's reliance on judicial estoppel
with respect to each of Coast's claims.

### A.  Claims Dismissed on Basis of Judicial Estoppel

We find that seven of Coast's claims -- Counts One, Four, Six, Seven, Thirteen,
Fourteen, and Fifteen -- were dismissed on the basis of the default finding, and we
therefore vacate the grant of summary judgment on those claims.

The dismissal of Count One, Breach of Contract, most clearly depended on the
judicial estoppel finding.  The court invoked judicial estoppel in its discussion of this
Count, and the court's finding of default formed the only stated basis for granting
summary judgment to VCI on this contract claim.  See Coast I at 5-7.  We vacate the
grant of summary judgment as to the breach of contract claim.

In dismissing Count Four, Lender Liability, the District Court stated:

> As this Court has granted summary judgment on plaintiff's contract, good
> faith and fair dealing, and fiduciary duty claims, the Fourth Count of
> plaintiff's complaint alleging lender liability will also be dismissed as
> plaintiff has failed to show any breach of duty by the defendants' actions.

Coast I at 8 n.5.  Because the court dismissed the contract and good faith/fair dealing
claims on the basis of judicial estoppel, this statement suggests that its dismissal of the
lender liability claim was based on judicial estoppel as well.  We vacate as to this claim.

On Count Six, Conversion and Concealment of Assets, the court stated that:

> the security agreements executed between the parties provided the
> defendants with the paramount right to possess the collateral in the event of
> a default, and that Coast would deliver such collateral to the defendants.
> Thus, as a default had occurred, pursuant to the agreements between the
> parties, defendants were entitled to a right of possession.

Coast I at 10-11 (emphasis added).  Because this holding as to the conversion claim
depended on the finding of default, we vacate.

Count Seven alleged negligent supervision by VCI of its employees. The court

stated that this count alleged acts of industrial espionage and tortious interference similar to those contained in other counts (namely Counts 8 and 9, discussed below). The court stated that "such claims must fail for the same reasons as previously indicated." Id. at 17 n.10. However, the court also stated that "as this Court has found that defendants did not breach the agreements, plaintiff's negligent supervision claim must also fail." Id. (emphasis added). Thus, this claim was dismissed on the basis of the judicial estoppel default finding, which formed the basis for deciding that VCI did not breach the Agreements. We vacate as to this claim.

In discussing Count Thirteen, Breach of Implied Contract and Duty of Good Faith, the court held that "the duty of good faith cannot be invoked by plaintiff to preclude defendants from exercising their rights under the agreements upon Coast's default." Coast I at 8 (emphasis added). Default thus formed the sole basis for dismissal. We vacate as to this claim.

Finally, Counts Fourteen and Fifteen alleged discrimination by VCI under federal and state law respectively, on the basis of Shansab's status as a native of Afghanistan. Coast alleged that VCI terminated Coast's line of credit because of Shansab's race. In its second summary judgment order, in which it dismissed these claims, the court reviewed its first order, and specifically recounted its judicial estoppel finding of default. See Coast II at 2-3. The court expressly relied on the default finding to hold that Coast could not make a prima face case of discrimination in both its federal and state claims because it could not prove that Coast was qualified to continue to receive credit. Id. at 20-21. The court stated at length that its finding of default barred Coast in its discrimination claim. Id. The court also noted that even if Coast could make out a prima facie case, VCI had a race-neutral reason for its action: that Coast was in default, as decided in Coast I by judicial estoppel. Id. at 21-22. The court concluded that Coast's discrimination claims were "bereft of any evidence that VCI intentionally discriminated against Coast... when it exercised its rights under the parties' agreements and foreclosed on its collateral." Id. at 22 (emphasis added). Because the District Court's dismissal of

these discrimination claims was based heavily on the judicial estoppel finding of default, we vacate as to these claims.

B.  Claims Dismissed on Grounds Independent of Judicial Estoppel

The District Court dismissed nine of Coast's claims against VCI without reliance on the judicial estoppel analysis.  We do not find any error in the court's treatment of the following claims, and therefore we affirm the grant of summary judgment to VCI on these claims.

With regard to Count Two, Breach of Fiduciary Duty, the court concluded that "no independent fiduciary duty is generally owed from a lender to a borrower" and that "plaintiff has failed to show that defendants owed plaintiff a separate duty of care outside of its obligations under the various loan agreements."  Coast I at 8.  Although this discussion occurred in the same section in which judicial estoppel was invoked, the court did not rely on the default finding for dismissal.  We therefore affirm as to this claim.

The court held on Count Three, Fraud, that "a mere alleged breach of contract without more does not create the existence of a fraud claim" and that plaintiff failed to plead fraud with particularity under Federal Rule of Civil Procedure Rule 9(b).  Id. at 9–10.  Default played no role, and we find no error, so we affirm.  On Count Five, Trespass, the court similarly did not rely on the default finding but stated that "if an individual has a cognizable right to enter the property, no action for trespass may lie" and that here "defendants had a contractual right to enter Coast's premises in order to inspect and safeguard its collateral, as well as to review Coast's books and records."  Id. at 10.  To be invoked, the contractual right to enter Coast's premises, inspect, and review did not require default by Coast.  We affirm the dismissal of the trespass claim.

Count Eight was dismissed because Coast did not meet the elements of "industrial espionage."  The court construed Count Nine as alleging tortious interference with prospective economic advantage, and found that Coast presented no evidence to support several of the elements of that claim.  The court dismissed Count Ten, Unwarranted Issuance of Subpoenas, because Coast presented no evidence that subpoenas were issued

wrongly. On none of these counts did the court rely on the default finding, and we find no error in its consideration of these claims. Id. at 16–17. We therefore affirm as to these claims.

The court found that the bankruptcy remedy of Equitable Subordination, which Coast requested in Count Eleven, was not warranted here because Coast's bankruptcy case had been dismissed, Coast lacked standing to bring such a claim, and because the equitable remedy was not justified on the facts of this case. Id. at 11–12. Default played no role, and we find no error. We affirm the dismissal of Count Eleven.

The court found that Coast presented no evidence of agreement to support its claim of Conspiracy between VCI and codefendants AOA and VOA. Id. at 12. Again, default played no role, and we affirm. Finally, the court dismissed Count Sixteen, Violation of 42 U.S.C. 1982, because 1982 does not protect contract rights such as those asserted to be violated here, and therefore Coast could not state a claim under 1982. We affirm.

IV

For the foregoing reasons, we hold that the District Court abused its discretion in invoking judicial estoppel to find that Coast defaulted on the Agreements. We vacate the District Court's grant of summary judgment in favor of VCI on claims decided on the basis of the court's application of judicial estoppel: Counts One, Four, Six, Seven, Thirteen, Fourteen, and Fifteen of Coast's Complaint. We affirm the grant of summary judgment in favor of VCI on the remainder of Coast's claims: Counts Two, Three, Five, Eight, Nine, Ten, Eleven, Twelve, and Sixteen. We remand to the District Court for further proceedings.

_____

TO THE CLERK OF THE COURT:

Kindly file the foregoing Opinion.


/s/ Julio M. Fuentes
Circuit Judge