

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-27-2002

# Richard B Roush Inc v. New England Mutl

Precedential or Non-Precedential: Precedential

Docket No. 01-4156

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Richard B Roush Inc v. New England Mutl" (2002). *2002 Decisions.* Paper 776.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/776

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed November 27, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-4156

RICHARD B. ROUSH, INC. PROFIT SHARING PLAN,
by Richard K. Roush, Trustee;
ROUSH INSURANCE GROUP, INC., as successor
to RICHARD B. ROUSH, INC.; RICHARD B. ROUSH, INC.;
RICHARD K. ROUSH,
        Appellants

v.

THE NEW ENGLAND MUTUAL LIFE INSURANCE
COMPANY; NEW ENGLAND FINANCIAL

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 4:CV-99-00485)
District Judge: Honorable James F. McClure, Jr.

Argued: Thursday, September 26, 2002

Before: BARRY, AMBRO and GARTH, Circuit Judges

(Opinion Filed: November 27, 2002)

        E. Parry Warner (argued)
        William J. Leonard
        Obermayer Rebmann Maxwell &
         Hippell LLP
        One Pennsylvania Center, 19th Floor
        Philadelphia, PA 19103-1895

        Attorneys for Appellants


        E. Thomas Henefer (argued)
        Stevens & Lee
        111 North Sixth Street
        P.O. Box 679
        Reading, Pennsylvania 19603

        Attorney for Appellees

OPINION OF THE COURT

Garth, Circuit Judge:

This appeal brings before us a claim by the plaintiff,
Roush,1 that the fiduciary of his funds, the defendant, New
England,2 failed to deposit and invest the funds as
instructed and by that failure, among others, breached his

trust under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. S 1001-1461.

The District Court barred Roush's action pursuant to the three year statute of limitations period provided in 29 U.S.C. S 1113(2)3 and by so doing ruled against Roush in each of the breach of fiduciary duty claims alleged in Count I. The District Court ruled against Roush as well with respect to Count II (prohibited transactions). The District Court held that Roush had been obliged to file his action against New England by December of 1998,4 holding that Roush's cause of action commenced in December 1995.

_____

1. The plaintiffs are Richard B. Roush Profit Sharing Plan, an ERISA-regulated profit sharing plan, currently having participants that were employed by Roush Insurance Group, Inc., and the two plan trustees, Richard B. and Richard K. Roush (collectively "Roush").
2. The defendants are The New England Mutual Life Insurance Company and its successor, New England Financial (collectively "New England").
3. In relevant part, 29 U.S.C. S 1113(2) provides:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of--
>
> . . . . three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation . . . .

4. The District Court never explicitly stated the exact date on which Roush's cause of action accrued; instead, it adverted to the fact that

2

Although our decisions in Kurz v. Philadelphia Elec. Co., 96 F.3d 1544 (3d Cir. 1996), and its predecessors Gluck v. Unisys Corp., 960 F.2d 1168 (3d Cir. 1992), and Int'l Union of Elect., Elect., Salaried, Mach. and Furniture Workers, AFL-CIO v. Murata Erie N. Am., Inc., 980 F.2d 889 (3d Cir. 1992), were addressed by the District Court, the two-prong standard prescribed for the analysis of the ERISA statute of limitations bar was not employed in accordance with these precedents. Subsequent to the District Court's summary judgment ruling in favor of New England, Montrose Med. Grp. Participating Sav. Plan v. Bulger, 243 F.3d 773 (3d Cir. 2001), was filed, clarifying the two-prong standard we discuss infra.

We hold that the District Court erred in barring Roush's claim against New England for breach of fiduciary duties (the delay in investment of his funds and the delay in accurate accountings) and we will remand to the District Court for further proceedings now that we have held that the statute of limitations is no bar to Roush's action.

I

The District Court had jurisdiction pursuant to 28 U.S.C. S 1331 and 29 U.S.C. S 1132(e)(1). We have jurisdiction

under 28 U.S.C. S 1291. Our review of a district court's decision on summary judgment is plenary. Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 566 n.3 (3d Cir. 2002). On review, we are required to apply the same test the District Court should have utilized initially. J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1542, 1530-31 (3d Cir. 1990).

## II

For our purposes here, we have detailed only those facts that bear on our current disposition.

---

Roush received notice of the investment delay in the"fall of 1995" and then referred to the New England December 1995 letter, which confirmed that a delay in investments had occurred, as providing the commencement date of Roush's cause of action. Richard B. Roush, Inc. v. The New England Mut. Life Ins. Co., 166 F. Supp. 2d 187, 200 (M.D. Pa. 2001).

### A. The Plan

On December 6, 1994, Roush executed the New England Age Based Contribution Plus Profit Sharing Plan Adoption Agreement, which was designed by New England and constituted an amendment and restatement of Roush's existing Profit Sharing Plan. Roush then adopted The New England Age Based Contribution Plus Profit Sharing Plan (the "Plan"). New England issued a Group Annuity Policy ("Policy") on March 29, 1995, which it designed to pay the benefits under the Plan. The Policy provided that New England would maintain a General Account and various Separate Accounts in which it would invest funds received from Roush, according to Roush's employees' designations. Funds in the General Account earned a fixed rate of interest determined by New England. The General Account funds were unaffected by market movements, whereas funds deposited in the Separate Accounts received earnings based on market movements and thus had the potential for much higher returns to Plan participants. On May 24, 1995, Roush transferred Plan assets in the amount of $961,394.89 to New England for allocation into these Separate Accounts.

### B. The Investment Delay

During the period of May 24 to September 30, 1995, Roush made numerous requests to New England for a complete accounting of the funds transferred to New England and the return on those funds. In September 1995 and later in November 1995, New England provided accountings to Roush but did not furnish information as to the specific principal amounts transferred into each fund, nor the return on such funds for each participant. Roush informed New England, several times, that the account allocation and balances were incorrect and demanded that adjustments be made, and that correct accountings be

provided.

C. New England's December 12, 1995 letter

On December 12, 1995, Stephen Chiumenti, an attorney employed by New England, wrote a letter to Roush

admitting New England's failure to invest properly Roush's funds. Among other matters, Chiumenti represented that:

> . . . we want to confirm that the instructions that we received dated May 22, 1995 continue to be valid directions. If so, we will implement them immediately without prejudice to your rights regarding the intervening delay.

Subsequently, most of the Plan funds in the General Account were transferred to the Separate Accounts on December 14, 1995, except for approximately $25,000 which, contrary to Roush's instructions, apparently remained in New England's General Account. In a July 17, 1996 letter to Roush, Chiumenti wrote that New England wished to put Roush in the "same place" he would have been put, as "[i]t is our intention, as expressed in my prior letter and every communication we have had, to adjust your plan accounts to reflect the instructions as you believe they should have been implemented."

D. Settlement Discussions

On July 13, 1996, Roush demanded by letter to Chiumenti that funds be increased to account for the loss of interest from the investment delay, that an accurate and complete accounting be provided, and that all funds be transferred out of New England without a surrender charge.[5] In an August 2, 1996 letter, however, Chiumenti stated that New England would not waive the surrender charge nor make any adjustment for the lost interest should Roush decide to transfer the funds. He also wrote that New England would adjust the balance to reflect dividends from the investment delay, in the amount of $101,727.87, only if Roush executed a settlement agreement and release or rolled over the funds into a new policy. Based on an independent audit, Roush claimed that New England owed Roush at least $313,000.

---

5. New England required a 5% surrender charge on withdrawal of funds during the first five years. A-126.

III

Roush filed a complaint against New England in the United States District Court for the Middle District of

Pennsylvania on March 26, 1999. Roush alleged ERISA and state law claims regarding mismanagement of assets under an employee pension benefit plan. After New England filed a motion to dismiss Roush's state law claims based on ERISA preemption, Roush filed an amended complaint on June 14, 1999. Roush asserted, in Count I, breaches of fiduciary duty under ERISA from the investment delay; failing to provide a complete accounting; failing to credit accounts according to Roush's instructions; failing to provide administrative services and failing to return the Plan funds with the returns generated by the funds. The amended complaint also asserted, in an alternative Count II, various prohibited transactions under ERISA. Complaint PP 76-82.

Roush moved for partial summary judgment on liability on June 19, 2000. New England moved for summary judgment on July 13, 2000. On October 16, 2001, the District Court denied Roush's motion and granted New England's motion. Roush filed a timely notice of appeal on November 14, 2001, seeking reversal of the District Court's judgment.

IV

As we have earlier noted, this case presents the issue of when the three year limitations period in ERISA, 29 U.S.C. S 1113(2), which is triggered by the plaintiff having "actual knowledge" of a breach or violation under ERISA, begins.

The applicable statute of limitations for breach of fiduciary duty under ERISA is found in 29 U.S.C.S 1113. It provides:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of--

6

> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation. (Emphasis supplied).

Because the statute of limitations is an affirmative defense and because New England is the movant for summary judgment, the burden of proof that the statute of

limitations bars Roush's action rests on New England. Thus, to prevail in its summary judgment motion, New England had to prove that Roush had "actual knowledge of the breach" more than three years before his action was filed on March 26, 1999, which would be before March 26, 1996. We have interpreted "actual knowledge" in the context of 29 U.S.C. S 1113 as requiring not only actual knowledge of the facts giving rise to the fiduciary violation but also as requiring actual knowledge that those facts support a cause of action under ERISA. Montrose , 243 F.3d at 787.

Gluck v. Unisys Corp., 960 F.2d 1168 (3d Cir. 1992), is the seminal case in the Circuit on the issue of "actual knowledge" under 29 U.S.C. S 1113. In Gluck, we held that " '[a]ctual knowledge of a breach or violation' requires knowledge of all relevant facts at least sufficient to give the plaintiff knowledge that a fiduciary duty has been breached or ERISA provision violated." Id. at 1178. This knowledge could come from "necessary opinions of experts . . . [,] knowledge of a transaction's harmful consequences . . . [,] or even actual harm." Id. at 1177 (internal citations omitted). We also emphasized that "[s]ection 1113 sets a high standard for barring claims against fiduciaries prior to the expiration of the sections's six-year limitations period." Id. at 1176. (Emphasis supplied).

7

In Gluck, the underlying violation concerned an amendment to a pension plan. This amendment impermissibly changed and partially terminated the plan, resulting in a failure of the participants' benefits to vest fully. The District Court barred the participants' claims as untimely as they were filed more than three years after the company's alleged breach. We held that a participant's knowledge of the amendment and its effect failed to provide "actual knowledge" of "each of the elements of a violation of a technical provision of ERISA," as we could not discern from the record what the "employees knew and when." Id. at 1171. We reasoned that a participant could not have knowledge of an ERISA violation where the amendment did not disclose its harmful consequences. We further reasoned that because the company literature distributed to employees described the amendment as improving benefits, such literature served to mask the amendment's harmful consequences. Id. at 1178-9. Accordingly, we concluded that under the circumstances of the case, for a participant to realize that he had a cause of action he had to review the plan document and balance sheet and that this "level of research and scrutiny [was] inconsistent with section 1113's actual knowledge standard." Id. at 1179.

Since Gluck, there have been other cases that have refined the ERISA "actual knowledge" standard. In Int'l Union of Elect., Elect., Salaried, Mach. and Furniture Workers, AFL-CIO v. Murata Erie N. Am., Inc., we interpreted Gluck as a two-prong test requiring "a showing that plaintiffs actually knew not only of the events that occurred

which constituted the breach or violation but also that those events supported a claim of breach of fiduciary duty or violation under ERISA." 980 F.2d 889, 900 (3d Cir. 1992).

In Kurz v. Philadelphia Elect. Co., we employed the same two-prong standard where the underlying violation concerned a change to an employee pension plan and the statute of limitations barred the employees' claims. The employer had made efforts to change its pension plan in order to provide more lucrative benefits to its employees. The employer announced the favorable change on July 2, 1987 and implemented it on August 1, 1987. Kurz , 96 F.3d

at 1547. The employer, however, had given "serious consideration"6 to the beneficial change beginning on May 28, 1987. The plaintiffs were employees who had inquired as to their benefits after May 28, 1987 but retired before the July 2, 1987 announcement. We reasoned there that employees had "actual knowledge" of their breach of fiduciary duty claim the day the employer announced the pension increase because on that date all the material elements of a breach of fiduciary duty were "patently obvious." Kurz, 96 F.3d at 1551. Specifically, on the day of the announcement, those who had inquired about their benefits and had retired prior to reaping the rewards of that amendment knew that: (1) benefits had been increased; (2) they were not eligible for the new benefits package; and (3) their employer had failed to inform them about the change, even though they had asked. Thus, the employees had "actual knowledge" of the event (the modification of benefits) and the consequences that ensued.

Of greater significance to us is our holding in the recent case of Montrose Med. Grp. Participating Sav. Plan v. Bulger, 243 F.3d 773 (3d Cir. 2001). In Montrose we stated that "Gluck . . . requires a showing that plaintiffs actually knew not only of the events that occurred which constitute the breach or violation but also that those events supported a claim of breach of fiduciary duty or violation under ERISA." 243 F.3d at 787. (Emphasis in original).

In Montrose, a hospital and its retirement plan had brought an action against an insurance company for breach of fiduciary duty. The insurance company's policies funded the hospital's retirement plan. At issue was whether the hospital could be charged with having "actual knowledge" of its claim for breach of fiduciary duty under ERISA by November 1991. If the hospital possessed the "actual knowledge" required by our two-prong standard its claim would be barred by the three year statute of limitations. The insurance company charged that Montrose had knowledge of a number of relevant facts, all of which were based on the claimed fiduciary violations.

_____

6. See Fisher v. Philadelphia Elec. Co., 96 F.3d 1533 (3d Cir. 1996)

("Fisher II") (cited in Kurz, 96 F.3d at 1550).

We concluded that the hospital could not have had "actual knowledge" that an ERISA claim existed since it did not possess "actual knowledge" that the plan in question was covered by ERISA. 243 F.3d at 788. Thus, with the two-prong standard of Montrose squarely established, we turn to New England's defense that Roush's claims are barred by the three year statute of limitations, 29 U.S.C. S 1113(2).

V

As we have discussed, the significant feature of the two-prong standard discussed in Montrose is that in order to be barred by the three year statute of limitations the claimant knows the facts on which he relies to establish a breach of fiduciary duty. It must also be established that the claimant knows that he has a cause of action under ERISA, which includes "actual knowledge" of harm inflicted or harmful consequences.

Here, Roush knew in December 1995 that New England had not followed his instructions, had not furnished him with the necessary and complete accountings and had not allocated the funds to the Separate Accounts for each of the participants. What Roush did not know was that those actions by New England had harmed him or would have harmful consequences--an ingredient of the second prong of "actual knowledge." Int'l Union, 980 F.2d at 900.

As earlier related, when Roush received Chiumenti's December 12, 1995 letter, which informed him that the allocation to the Separate Accounts had not been made as his instructions required but that action would be taken to implement Roush's instructions without prejudice to Roush's rights regarding the intervening delay (i.e., the delay from May 24, 1995 to December 12, 1995), Roush could not have known that he and the participants had an ERISA cause of action at that point in time because he had not yet been harmed nor did he have knowledge that he would be harmed.

It should be remembered that in December 1995, the date to which the District Court looked for the running of the statute of limitations, Roush had yet to receive a

completed, accurate accounting for the funds he had transferred to New England. Without knowledge of how New England had handled, invested or allocated the $961,394.89 transferred to it and with assurances that all would be corrected and without prejudice to Roush's rights, it cannot be said, let alone inferred, that Roush had "actual knowledge" of the harm he ultimately was to suffer. Indeed,

as we noted earlier, an independent audit disclosed that Roush's claim against New England was calculated as $313,000.7

As we have stated previously, S 1113 sets a "high standard" for barring claims against fiduciaries prior to the expiration of the six year limitations period and thus we have interpreted the actual knowledge requirement "stringent[ly]". See Montrose, 243 F.3d at 787 (quoting Gluck, 960 F.2d at 1176). The undisputed facts establish that under the second prong for "actual knowledge" of an ERISA cause of action, which includes actual knowledge of harm or harmful consequences required by Montrose, Roush did not have the required "actual knowledge." See Montrose, 243 F.3d at 787-88. As we review the record it is clear that Roush did not have "actual knowledge" of harm and thus an ERISA cause of action until March 26, 1996 at the earliest, if then.8 If Roush could not have had "actual

_____

7. We are also aware of the $25,000 which still remained in New England's General Account and apparently was not distributed to the Separate Accounts until well into 1996. It is obvious, however, in terms of Roush's actual knowledge that this $25,000 retained in the General Account at a lower interest rate was not known to Roush by December 1995. Indeed, the internal memoranda of New England reveal New England's very evident reluctance to inform Roush of its failure to invest all of the monies transferred. Specifically, in a March 5, 1996 e-mail from Dawn Loase to Larry Hoisington, two employees of New England, Loase wrote that she "would rather [Roush] wasn't aware that these [the $25,000] didn't get transferred as [Roush] wished."

8. In his brief, Roush maintains that he did not possess "actual knowledge" of his cause of action until August 5, 1996, when he received a letter from Chiumenti outlining settlement options. A-259-60. Under these options, if Roush wished to receive the interest he lost due to the investment delay, he would only be entitled to $101,727.87, and moreover, he would either be forced to maintain his accounts at New

11

knowledge" until March 26, 1996, then 29 U.S.C.S 1113(2), the three year statute of limitations, cannot be a bar to his action against New England, inasmuch as Roush's complaint was filed on March 26, 1999.

Moreover, buttressing this conclusion is the promise made by Chiumenti in his December 12, 1995 letter that New England would cure the violations and deficiencies for which it was responsible to that point. It would be ludicrous to require a claimant who had been informed that his claims would be favorably resolved or that "the check is in the mail" to institute immediately a legal action seeking to rectify the violations of which he complained and which were now to be cured. Nor should he be required to start an action for money due when told that payment had been posted to him. Were we to hold that a "curing" letter should be disregarded and that actions must be filed regardless of the assurances given by the putative defendant or debtor,

we would be encouraging needless litigation that would result in unwarranted penalties being visited upon those who voluntarily and willingly sought to resolve their differences with claimants.

In this case, even if Roush could be deemed to have had the actual knowledge of harm (which we have held he did not), Chiumenti's letter at the very least acted to lull Roush into inaction until such time as New England's violations were cured, proper accountings were received and adjustments to accounts were made. See, e.g., Bechtel v. Robinson, 886 F.2d 644, 650 (3d Cir. 1989) (under

_____

England or incur a 5% surrender charge, and in both cases execute a release. The only other option involved New England treating the contract as void, which would deprive Roush of the benefits of the investment returns. By this time, however, Roush had hired an outside firm to calculate his losses from the investment delay, which were calculated in excess of $313,000 as of June 1998.

At oral argument, counsel for New England argued that although New England had always intended to resolve the investment delay by providing the missing interest, it was clear by the summer of 1996 that there would be no amicable resolution. Again, this only underscores our conclusion that Roush could not have known, until that time, of the harm that he would suffer.

12

Delaware law, a plaintiff 's reliance on a defendant's conduct or statements, whether intentionally or unintentionally misleading, to his detriment will equitably estop a defendant from asserting a statute of limitations defense); McConnell v. Gen. Tel. Co. of Cal., 814 F.2d 1311, 1317 (9th Cir. 1987) (representations of possible alternative employment within the company may toll the limitations period for the filing of an Age Discrimination in Employment Act ("ADEA") claim when the representations lull employees into untimely filings); Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 (3d Cir. 1983) (despite the statute of limitations provided by Congress in ADEA, where employer's own acts have "lulled" plaintiff into foregoing prompt attempts to vindicate his rights, equitable tolling may be proper). The record fairly read leads to no other conclusion than that New England had not rectified its violations respecting Roush until well after the bar date of March 26, 1996.

VI

The record clearly reveals to us that in December 1995 Roush did not have "actual knowledge" that he had an ERISA cause of action. Hence, by calculating the accrual date of the statute of limitations from December 1995, the District Court erred in holding that Roush's claim for breach of fiduciary duty was time-barred by the three year statute of limitations.

Accordingly, we will reverse the District Court's order of October 16, 2001 which granted summary judgment to New England on Count I and remand to the District Court for further proceedings as to all issues of the parties, including, but not limited to, the remedies if any to which Roush may be entitled.9

_____

9. At oral argument, Roush's counsel stated that our ruling on the three year limitations period would make it unnecessary to address the applicability of the six year limitations period under the fraud or concealment exception that he urged in his brief. We agree.

13

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

_____

Both parties agreed at oral argument that a decision by this Court reversing on the basis of the statute of limitations would render it unnecessary for us to consider the remedies Roush seeks, i.e., damages for the interest lost in the investment delay, relief from the surrender charges, etc.

In addition, we need not address the second issue presented in Roush's appeal, i.e., did the District Court err in concluding, as a matter of law, that New England had not engaged in transactions prohibited by ERISA under 29 U.S.C. S 1106 (prohibited transactions). Both parties agreed that our reversal of the District Court's judgment respecting Count I renders discussion of Count II, an alternative claim based on the same matrix of facts, unnecessary.

14